SEXTON, Judge.
Plaintiff, Robert W. Moreland, appeals a partially adverse judgment in a case arising as a result of a dispute over a stock purchase agreement. This agreement was between the plaintiff and defendants, William D. Green and Phillip Sims, who were at all times relevant, shareholders, directors and members of a group holding controlling stock of Claiborne Bank and Trust Company, Homer, Louisiana. We affirm.
Some years before this litigation, the parties to this suit and others who had combined to form a “Control group” borrowed $867,000 from Central Bank in Monroe in order to purchase 51% of the capital stock of the Claiborne Bank and Trust Company. The loan was secured by the pledge of the 51% stock which they individually owned.
In 1983, a cease and desist order was issued by the FDIC to Claiborne Bank and Trust directing that $650,000 be injected into the capital structure of the bank and that certain unsound banking practices cease. Through counsel, the bank negotiated with FDIC to reduce the required amount to $500,000.
After reviewing a number of alternatives, it was decided by the Board of Directors with FDIC approval that certain shareholders would make a cash capital contribution or injection into the capital structure of the bank. These injectors were Phillip Sims, William Green, Robert *977 Moreland, Joe Michael, and Melvin Procell. The approximate amounts of each contribution were as follows: Moreland — $71,000; Procell — $71,000; Michael — $71,000; Sims —$110,000; Green — $110,000. No stock certificates or evidence of indebtedness were issued with respect to this increased capitalization.
At the time of the injection, Robert W. Moreland, who had been serving as Chairman of the Board, desired to relinquish his position and resigned. He further wanted to leave the banking business and sought buyers for his stock. As Moreland wished to make no permanent contribution to the required injection, he agreed to put up $71,-428.57 as his part of the injection subject to an agreement with Sims and Green that they would reimburse him for the amount. Moreland borrowed the $71,000 plus dollars from Citizens Bank of Arcadia and executed a note representing that obligation. He signed a buy-sell agreement with Sims and Green, the breach of which is the subject of this suit. The agreement entered into provided:
Agreement between Robert W. More-land here after called Seller and William D. Green and Phillip Sims called Buyers.
Buyer will purchase 270 days from date Thirty-two Thousand, Seven Hundred eighty-nine (32,789) shares of Claiborne Bank and Trust Company stock at Three Dollars ($3.00) per share. This stock is now pledged to loans at Central Bank in Monroe and represents a part of a 51% block of control stock in Claiborne Bank.
In addition Buyers will pay seller Seventy-one Thousand, Four Hundred Twenty-eight Dollars & 57/ioo ($71,428.57) with interest at the prime rate charged by Citizens Bank in Arcadia. This payment represents sellers percent of a capital injection made to Claiborne Bank and is covered by agreement in the minutes of Claiborne Bank.
In October, 1984, Claiborne Bank decided to issue stock as compensation to those who had made capital injections. Defendants Green and Sims paid off Moreland’s note at the Citizens Bank of Arcadia. The note was returned to Moreland marked “paid” by that bank. Green and Sims then had the stock representing Moreland’s share of the capital injection issued in their names by Claiborne Bank, thinking they had “bought out” Moreland’s capital injection.
Moreland filed suit seeking judgment ordering the defendants to specifically perform their alleged obligation to buy petitioner’s 32,789 shares of the Claiborne Bank pledged to the Central Bank in Monroe and to pay the sum called for in the agreement. He further sought judgment ordering the defendants “to return” to him the 68,681 shares of the common stock of Claiborne Bank “which they caused to be issued to themselves,” or that in default thereof, petitioner receive judgment in the sum of $71,428.58, the amount which his pleadings asserted that the injection stock was issued to represent.
The trial court entered judgment in favor of Moreland on his first request compelling compliance with the agreement to purchase the pledged stock for $3.00 per share. The trial court rejected the plaintiff’s demands for a decree ordering defendants to return 68,681 shares of common stock issued to them as compensation for the capital injection made by the plaintiff.
Moreland appeals seeking reversal of the latter ruling. Green answers the appeal requesting reversal of the holding requiring purchase of the pledged stock. Sims does not appeal or answer. Green assigns as error (1) that the trial court rendered an opinion while the case was being held open to take the deposition of a witness; (2) that the trial court erred in requiring Green to buy the pledged stock, and (3) that the trial court erred in concluding that Green and Sims were solidarily liable. We will deal first with the assignments of error manifested in Green’s answer.
Mr. Green assigns as error the trial court’s rendition of an opinion before the taking, filing and consideration by the court of the deposition of Mr. David McKenzie, a loan officer with Central Bank *978 in Monroe, Louisiana. Mr. Green points out that both parties entered into a stipulation that they reserved the right to call Mr. McKenzie or take his deposition, and that the trial judge indicated that the case would be held open for the taking of the deposition of Mr. McKenzie.
The case at bar was tried on September 10 and 11, 1985. The opinion was rendered on September 17, 1985. Mr. McKenzie’s deposition was taken on October 14, 1985, and filed on October 21, 1985. Judgment was signed on November 6, 1985. Although it may have been inappropriate for the trial judge to hand down his opinion while the case was being held open for Mr. McKenzie’s testimony, we note that since the judgment was not signed until after the deposition was filed, the trial judge had an opportunity to read it and, if warranted, change his opinion. We also note that the defendants did not move for a new trial in the trial court specifying portions of the deposition which should warrant a different result than that originally reached by the trial court. Also, while Mr. Green’s brief complains of this trial court action in general it does not specifically point to portions of the deposition at issue which should warrant a different result. Where the court of appeal has the entire record, it is our obligation to rule on that record rather than remand. West v. West, 475 So.2d 56 (La.App. 2d Cir.1985), writ denied 478 So.2d 147 (La.1985). Having reviewed this deposition in light of the other evidence in the case, we are of the opinion that the trial court judgment was nevertheless appropriate on the record.
Secondly, Mr. Green argues that the trial court interpretation of the contract does not represent the true intent of the parties because the agreement did not contemplate that Sims and Green would be required to purchase stock which was still pledged to the Central Bank in Monroe. The trial court decided this factual issue adversely to Green and Sims in the following terms:
This argument must be dismissed for several reasons. First, the contract was meticulously evaluated and composed by the defendants for plaintiff’s signature. Any ambiguity should be construed against them. Secondly, it is not reasonable to assume that they anticipated receiving this stock free of pledge when it was actually pledged to secure their own and others’ indebtedness to the Central Bank of Monroe; thus, their contstruction (sic) would require plaintiff to pay off the entire indebtedness outstanding under that pledge, including that for which their own stock was pledged. Thirdly, this claim was belated. Fourthly, showing that defendants did not consider the pledge burdensome, was Green’s testimony that he had prevailed upon Central to release his stock from the pledge and that plaintiff would have had no problem in securing a similar release. That being so, neither would Green after the acquisition. Finally, since the parties to this contract are bankers, surely and presumably steeped in the knowledge of contractual obligations, notes, mortgages and pledges, the failure of the contract to require delivery of the 32,789 shares free of pledge, although referring to the pledge, is deemed purposeful.
This analysis is sound and supported by the record. It will thus not be disturbed by us.
Finally, Green complains of the trial court finding that the obligation to purchase the pledged stock was one existing in solido.
LSA-C.C. Art. 1796 provides, “Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties’ intent or from the law.” A solidary obligation is one in which each obligor is liable for the whole performance and performance given by one of the solidary obligors relieves the other of liability toward the obligee. LSA-C.C. 1794.[1] Although the words “in solido” may *979 not appear in the contract agreement, it is sufficient if all the essential elements of an obligation in solido are present. Dodd v. Lakeview Motors, Inc., 149 So. 278 (La.App. 2d Cir.1933).
The agreement executed indicates that it was between “Robert W. Moreland hereafter called seller and William D. Green and Phillip Sims called buyers.” All three of the parties signed the instrument. The agreement in the second paragraph obligates “Buyer” (singular) to purchase 32,-789 shares of stock. In thé third paragraph, “Buyers” (plural) are obligated to pay seller $71,428.57.
Considering, as the trial court noted, the meticulous preparation of the buy-sell agreement, we conclude that the use of the word “buyer” in the singular in the paragraph relating to the purchase of the stock held at the Central Bank in Monroe was purposeful, particularly since buyers are referred to in the plural in all other respects in the agreement.
It is clear in our law that where co-makers sign a note containing the phrase “I promise to pay,” each is regarded as liable for the entire obligation thus resulting in solidary liability. LSA-R.S. 10:3-118. Likewise, when co-makers obligate to pay under the phrase “We promise to pay,” only a joint obligation limiting each co-member to his virile share is confected. Johnson v. Jones-Journet, 320 So.2d 533 (La.1975); Gavin v. Superior Applicators, Inc., 484 So.2d 792 (La.App. 1st Cir.1986), writ denied 487 So.2d 439 (La.1986).
Thus, we determine that the use of the word buyer in the singular with respect to the pledged stock is fatal to the position asserted by appellee Green and conclude that a solidary obligation to purchase this stock existed between Green and Sims.
Having found no merit to the assignments of error asserted by Mr. Green, we thus proceed to the central issue presented by this appeal. That issue is whether the defendant should be ordered to either deliver the 68,681 shares of stock representing Moreland’s original capital injection to Mr. Moreland or pay him $71,428.57, the sum those shares represent.
As we have explained, Robert Moreland was the maker of a $71,428.57 note payable to Citizens Bank in Arcadia. Pursuant to a buy-sell agreement entered into between Moreland and Green and Sims, the defendants paid off Moreland’s note at Citizens Bank. Moreland received his note marked “paid.” Through payment of the debt of Moreland, Green and Sims became subro-gees who were authorized to avail themselves of the Bank’s original rights to the extent they had paid. LSA-C.C. Art. 1825; Comeaux v. Roy, 469 So.2d 478 (La.App. 3d Cir.1985), see Niemann v. Travelers Insurance Company, 368 So.2d 1003 (La.1979); 4 Aubry et Rau, Cours de Droit Civil Francais, no. 321 (6th ed. 1946). The effect of this payment is, as this court noted in International Paper Company v. Arkansas and Louisiana Missouri Ry Company, 35 So.2d 769, 771 (La.App. 2nd Cir.1948), that the subrogees are “figuratively put in the shoes of the creditor which means that all laws applicable to the latter, in the enforcement of rights and remedies, apply with equal force to the former.” Simply stated, Moreland owed Green and Sims the sum they had paid.
Recall that Green and Sims had 68,681 shares of common stock in Claiborne Bank issued in their names as compensation for having “bought out” Moreland’s capital injection.
However, this stock was neither bought nor bargained for. Moreland was thus, as an original injector, entitled to receive his share. Moreland specifically prayed for either an order requiring that Green and Sims render to him the 68,681 shares of stock of Claiborne Bank or that he have judgment against them in the sum of $71,- *980 428.57, the precise sum they paid to Citizens Bank in Arcadia in his behalf.
However, the net effect of Green and Sims subrogation to the bank’s claim against Moreland is to give the defendants an off-set against the amount they owe Moreland for the subsequent stock issuance.
Set-off, or to use the codal term, compensation, takes place by operation of law when two persons are indebted to each other. LSA-C.C. Art. 1893. However, two distinct debts, equally liquidated and de-mandable, must exist contemporaneously for set-off or compensation to be applicable. Hartley v. Hartley, 349 So.2d 1258 (La.1977). Once this criteria is met, the effect of compensation is the immediate reciprocal extinguishment of the two debts to the amount of their respective sums.
We therefore find that although William Green and Phillip Sims were erroneously issued the 68,681 shares of stock of Claiborne Bank, compensation occurred to negate any obligation thereby from them to Moreland. The Claiborne Bank stock was valued at $71,428.57 at issue. At that time, Robert Moreland was indebted to William Green and Phillip Sims in the amount of $71,428.57, representing the amount of the promissory note executed by him for which Green and Sims made full payment. Thus, compensation or set-off occurred extinguishing the obligation of Moreland to Green and Sims on the note of his which they had paid and extinguishing the obligation of Green and Sims to More-land on the stock that they received from Claiborne Bank. The trial court correctly rejected the demands of Mr. Moreland with respect to his claim for $71,428.57 or the return of the stock that sum represented.[2]
For the foregoing reasons, the judgment of the trial court is affirmed. Cost of this appeal are to be borne by appellant, Mr. Moreland.
AFFIRMED.

. Art. 1796 restates the principles of the previous C.C. Arts. 2093 and 2107, while 1794 restates *979 the principle in former 2091. The readactors comments indicate that these articles do not change the law.

. While it might be argued that the bank stock is not "liquidated and presently due” and therefore is not susceptible of being off-set, we are supported in our determination by LSA-C.C. Art. 1902, which states "[a]lthough the obligation claimed in compensation is unliquidated, the court can declare compensation as to that part of the obligation that is susceptible of prompt and easy liquidation.” The redactors comments note that this new article establishing judicial compensation does not change the law, but simply “generalizes a principle” underlying former Civil Code Articles 1880 and 2531.