JASPER E. JONES, Judge.
This is an action to dissolve an oral contract for the sale and installation of a computer system. The plaintiff is Color Connection, Inc. and the defendants are John Juneau, d/b/a Southern Microtech (Juneau) and Clarence Womack, d/b/a Q.E.D. Mi-croengineering (Womack). Juneau appeals the judgment dissolving the contract and holding him solidarily liable with Womack for return of the contract price.
*915 The specifications of error made by Juneau present two issues for decision:
(1) Did the trial court err in failing to find Juneau’s obligation under the contract was limited to delivery and installation of the computer equipment? and
(2) Alternatively, did the trial court err in finding Juneau and Womack were soli-dary obligors, rather than partners in a joint venture?

The Facts

Plaintiff is a Louisiana corporation domiciled in Shreveport engaged in the photographic processing business. Juneau operates a computer services company, under the trade name of Southern Microtech, which is located in Shreveport.
Prior to 1984, Juneau and the president of plaintiff, Mr. Eugene Mika, discussed the possibility of installing a computer system in plaintiffs photoprocessing lab which would permit information from a video analyzer to be stored until needed by the printers. Initially, Juneau informed Mika that he could obtain the necessary computer equipment and assist with the programing, as he was the local distributor for Mindset Computers, Inc., but he lacked the technical knowledge to “bridge the computers.” At the time of these preliminary discussions the parties did not enter into a contract for the installation of the computer system in plaintiffs lab.
In July or August, 1984, Womack applied for a job with Juneau. Womack’s resume reflected that he possessed the expertise required to install the complete computer system in plaintiff’s lab. Juneau arranged a meeting between Womack and Mika to discuss the system in an effort to obtain the contract to install the computer in plaintiff’s lab. Juneau further testified when Womack came back to his office a day or two later they worked up a proposal for plaintiff’s project using Juneau’s price list from Mindset, Inc. This proposal contains a description of equipment, its price and the cost for labor. It was prepared on Southern Microtech stationery and contains the name: “Clarence A. Womack, d/b/a Q.E.D. Microengineering.” Mika expressed a desire to use the system during the 1984 Christmas rush and the proposal reflects an eight week interval, from delivery of equipment, for completion.
Mika testified that in July or August of 1984 Juneau advised him he had someone who was able to help put the plaintiff’s desired computer system together. Several weeks later, Juneau gave Mika a copy of the proposal. The total price for the system reflected on the proposal was $19,-741.00. Mika testified he and Juneau entered into an oral contract based on the proposal. The proposal reflected equipment cost totaling $13,241.00 and labor cost of $6,500.00. It required payment of a 10% deposit of $1,974.00, a payment of $13,-241.00 upon equipment delivery and a completion balance of $4,526.00.
On August 25, 1984, plaintiff made its first payment to Juneau in the amount of $1,974.00 which represented a 10% payment on the price of the system, including material and labor as reflected on the proposal. Plaintiff issued Juneau two more checks dated September 12, 1984, one in the amount of $3,200.00, and one in the amount of $10,041.00. These checks, according to Mika, were issued to pay for the equipment. Plaintiff issued four checks payable to Womack totaling $4,526.00 between September 25 and November 9.
During the time frame of these payments plaintiff believed the defendants were performing the contract. The equipment had been delivered, but progress on the work soon became a problem. Womack was behind schedule putting the system together and it became evident the system would not be ready before Christmas, 1984. After Mika complained about the delay, the parties agreed to an alternate time schedule with February 2, 1985, as the completion date. However, the project was never completed and plaintiff filed suit against Juneau and Womack seeking to recover the purchase price of the system.[1] Womack *916 made no appearance at trial and a preliminary default was entered against him.
The judgment appealed found Womack and Juneau solidarily liable to plaintiff for the contract price of $21,493.50, and awarded ownership of the computer equipment to the defendants. The court found Juneau and Womack contracted to provide plaintiff with a computer system in plaintiff’s photographic business and they breached the contract. The trial court reasoned that although Womack prepared the proposal on Juneau’s stationery, Juneau dealt with Mika as a “single provider” of equipment and services due to the longtime friendship between Juneau and Mika and Mika’s confidence that Juneau knew what type of system was needed. The trial court found as a fact that Juneau’s delivery of the equipment' did not satisfy his obligation under the contract. The trial court confirmed the preliminary default against Womack. Juneau has appealed.
Issue No. 1 — Juneau’s Obligation Under the Contract
Juneau contends the trial court erred in failing to find his obligation under the contract was limited to delivery and installation of the computer equipment. Juneau argues plaintiff contracted with two entities, John Juneau, d/b/a Southern Micro-tech and Clarence Womack, d/b/a Q.E.D. Microengineering, and the obligations of each were separate and distinct. Juneau contends he contracted to supply the equipment and Womack contracted to program the system and tie it together. He argues the proposal represents an offer by Wom-ack to plaintiff and he had nothing to do with this proposal and did not give Wom-ack the authority to use Southern Micro-tech stationery. Juneau argues plaintiff paid him for the equipment only and paid Womack separately for his labor. These facts, according to Juneau, establish the parties entered into separate contracts and he has fulfilled his.
Plaintiff contends it contracted with Juneau and Womack for the purchase and installation of a system which would fulfill its needs. Plaintiff argues Juneau used his price lists in preparing the proposal which was typed on Southern Microtech stationery. Plaintiff points out Juneau did not testify he informed Mika that Womack would be responsible for the programming and he would be responsible for the equipment. Therefore, plaintiff contends the trial judge was correct in finding Womack and Juneau solidarily liable for breach of contract.

Applicable Law

LSA-C.C. art. 1796 provides: “Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties’ intent or from the law.” A solidary obligation is one in which each obligor is liable for the whole performance and performance given by one of the solidary obligors relieves the other of liability toward the obligee. LSA-C.C. art. 1794.[2] Although the words “in solido” may not appear in the contract, agreement or obligation, it is sufficient if all of the elements of an obligation in solido are present. Moreland v. Green, 501 So.2d 975 (La.App. 2d Cir.1987); Dodd v. Lakeview Motors, Inc., 149 So. 278 (La.App. 2d Cir.1933). The co-extensive obligations for the “same thing” create the solidarity of the obligations. The presumption against solidarity is only designed to be of assistance when it is necessary to determine whether an obligation is joint or solidary. Narcise v. Illinois Cent. Ry. Co., 427 So.2d 1192 (La.1983); Frank’s Door & Bldg. Supply, Inc. v. Double H. Construction Co., Inc., 459 So.2d 1273 (La.App. 1st Cir.1984).
*917 The proposal submitted to Mika was prepared by both Juneau and Womack from Juneau’s price lists. After the equipment was delivered, Juneau installed much of the necessary wiring, including the wiring in the enlarger room required to interface the computers, and the wiring in the print room. Juneau assisted with the software and attempted to maintain a satisfactory work schedule.
At a meeting between Mika, Juneau and Womack in the middle of January, Mika made strong complaints about the extensive delays which had occurred in the completion of the system. In response to those complaints Juneau and Womack agreed to work on the project at plaintiff’s lab two nights a week and on Saturday in Juneau’s shop in an attempt to complete the project. They complied with this work schedule for about two weeks and did succeed in getting two of the computers to communicate with each other. Soon after this progress was made the work stopped and in February, Mika advised Juneau that he desired to terminate the agreement. At this point Juneau indicated he could get someone else to help him complete the contract, but no further work was ever performed.
Juneau admitted he participated in the performance of the contract beyond supplying the computers and installing them, but he contends he did this work only out of interest in seeing the project successfully concluded and not because he was obligated to plaintiff to do this part of the work. The trial judge who saw and heard Juneau testify obviously rejected Juneau’s explanation for performing work on the overall system and we perceive no error in the trial judge’s determination.
Juneau was paid 10% of the total proposal price (which included the labor and material) at the outset. The proposal contained an amount of $6,500.00 for labor and this amount was not broken down as to an amount which would be paid to Juneau and certain part of which would be paid to Womack. We further note that Womack only received from plaintiff a total payment of $4,526.00. This circumstance indicates that about $2,000.00 of the labor part of the contract was paid to Juneau for his contribution to the construction of the system. Juneau testified he never informed Mika that the process of putting the system together would be a separate contract between plaintiff and Womack.
“TESTIMONY OF JUNEAU”
Q. You weren’t just involved with the sale of the computer?
A. At no charge to Mr. Mike I came in to expedíate the matters.
Q. As a matter of fact, all along, the whole routine, you were expediting matters; isn’t that right?
A. I was interested in seeing the computer systems operating as they were suppose to, yes.
Q. You worked at all phases in this matter?
A. No.
Q. What didn’t you work on?
A. I have no knowledge of hardware interfacing, I cannot hardware interface.
Q. You worked on the software, the wiring, and you worked with Clarence Womack?
A. I strung the wire.
Q. Did you at any time tell Mr. Mika that you were doing one particular part of the job and that Clarence was doing another?
A. I told Mr. Mika, I presume that you are referring to the point that I told Mr. Mika that I wanted to become more familiar with the software and functions of the Mindset computer, yes. As being a dealer for those computers I felt that it was—
Q. —you never told him, did you, that he was paying for part of the job with one person and part of the job with the other person?
A. No.
Q. Did you specifically tell him that?
A. No.
The record further establishes Juneau did not exclusively contribute all of the equipment necessary for the performance of the contract. The record affirmatively establishes that Womack contributed equipment valued at $3,200.00 and plaintiff, at the request of Womack and Juneau, ordered additional equipment valued at *918 $1,752.50. These observations establish that Womack’s contribution to the contract involved much more than labor and Wom-ack and Juneau were both making equipment and labor contributions toward supplying plaintiff with a complete computer system.
The totality of these circumstances provide a substantial evidentiary basis for the trial judge’s conclusion that Juneau and Womack contracted to supply plaintiff with a computer system suited to plaintiff’s needs. There is no manifest error in the trial court’s finding that Juneau and Wom-ack were each liable for the whole performance and performance by one would relieve the other of liability toward plaintiff, the obligee.
We note that the obligation which plaintiff now seeks to enforce is not the obligation of supplying and installing a computer system, but is the obligation of Juneau and Womack to respond in damages for breach of contract. Juneau and Wom-ack are still obliged to do the same thing, each may be compelled to pay the whole of the damage and payment by one would exonerate the other toward plaintiff. Therefore, all of the elements of an obligation in solido are present and the trial court was correct in holding Juneau and Womack solidarily liable for the damages flowing from their breach of contract. See Town of Winnsboro & Barnard & Burk, Inc., 294 So.2d 867 (La.App. 2d Cir.1975), writ den., 295 So.2d 445 (La.1974).
Issue No. 2 — Joint Venture
By this specification, Juneau alternatively contends the trial court erred in failing to find he and Womack were partners in a joint venture. Juneau argues he contributed his property and Womack contributed his skill for joint profits, thereby creating a joint venture. He contends their liability is, therefore, governed by the law of partnership, each being liable for his virile share.
Plaintiff argues the record is devoid of any evidence which would establish a partnership between Juneau and Womack. Applicable Law
In Cajun Electric Power Co-op, Inc. v. McNamara, 452 So.2d 212 (La.App. 1st Cir. 1984), writ den., 458 So.2d 123 (La.1984), the court set forth the elements of a joint venture:
“(1) A contract between two or more persons;
(2) A juridical entity or person is established;
(3) Contribution by all parties of either efforts or resources;
(4) The contribution must be in determinate proportions;
(5) There must be joint effort;
(6) There must be a mutual risk vis-a-vis losses;
(7) There must be a sharing of profits.”
The existence or nonexistence of a joint venture is a question of fact and each case must be considered sui generis. Cajun Electric Power Co-op, Inc. v. McNamara, supra; Varnado v. Sanders, 477 So.2d 1205 (La.App. 1st Cir.1985), writ den., 481 So.2d 630 (La,1986).
In the instant case, we conclude Juneau and Womack did not enter into a joint venture. There is no evidence in the record that a juridical entity or person was established between Juneau and Womack. To the contrary, Juneau was operating under the trade name of John Juneau, d/b/a Southern Microtech and Womack was operating under the trade name of Clarence Womack, d/b/a Q.E.D. Microengineering. There is no basis in the evidence that the two individuals became one for the purpose of the performance of the contract. We further find no agreement between Juneau and Womack to share losses. At trial Juneau acknowledged telling plaintiff if he was unsatisfied, the money would be refunded. Juneau testified he was referring to any dissatisfaction plaintiff may have with the computer equipment and not Womack’s labor. There is no evidence in the record that losses incurred in the performance of the contract by the defendants would be shared by them at all or in any particular proportions, nor is there any evidence in the record as to what proportion of the profits would be received by each.
The contention that Juneau and Womack were engaged in a joint venture, which was *919 first urged on appeal, is not supported by the record.
Juneau, in brief, alternatively asserts ownership of the computer equipment which was installed in plaintiffs business in connection with the abortive effort to comply with the contract.
The proposal upon which the verbal contract was based did not reflect that either defendant was specifically responsible for supplying the equipment and is subject to the interpretation that they were both supplying all equipment and labor. While the record establishes Juneau received payment for some of the equipment, it also reveals that Womack supplied equipment valued at $3,200.00 and plaintiff ordered additional equipment from the manufacturer valued at $1,752.50 at the request of Womack and Juneau.
Based upon these circumstances, we find no error in the trial court’s determination that the defendants were solidarily liable for the damages flowing from their breach of contract and recognizing both defendants as owners of the equipment.
For the foregoing reasons, the judgment of the trial court is affirmed at Juneau’s cost.
AFFIRMED.
SEXTON, J., concurs.

. The proposal reflects a total price for the system of $19,741.00, but additional equipment was purchased subsequent to the proposal in the *916 amount of $1,752.50, making the total cost of the system $21,493.50.

. LSA-C.C. art. 1794 provides:
“An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee."
Article 1796 restates the principles of former C.C. arts. 2093 and 2107, while art. 1794 restates the principle of former art. 2091. The readac-tors comments indicate that these articles do not change the law.