## Stanley E. Sacks, et al.

### v.

## Richard J. Tavss, et al.

Record No. 860244

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

\* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*Conrad M. Shumadine (William H. Shewmake; Willcox & Savage, P.C.,* on briefs), for appellants.

*Edward T. Caton (Barry Randolph Koch; Caton & Koch, P.C.,* on brief), for appellees.

CARRICO, C.J., delivered the opinion of the Court.

On February 7, 1985, Richard J. Tavss and Ruth F. Tavss filed a motion for judgment against Stanley E. Sacks and Carole R. Sacks. In the motion, the Tavsses sought recovery by way of contribution for sums they had paid in excess of amounts paid by the Sackses in satisfaction of certain loans the two couples had guaranteed. Upon motion of the Tavsses, the matter was transferred to the equity side of the court. After a bench trial, the chancellor awarded the Tavsses judgment for $135,097.93. The controlling question on appeal is whether the Tavsses were entitled to contribution.

Richard Tavss and Stanley Sacks are former law partners. In the mid-1970s, they joined a third person to form Regency Oldsmobile, Inc., with each participant holding an equal number of shares of stock. Later, the third person sold his interest to V. C. Baker.

Virginia National Bank, now Sovran Bank, financed Regency's operation through what is commonly known as a "floor plan," under which the Bank acquired a security interest in the dealership's inventory. Floor-plan loans made to Regency amounted to several million dollars.

In 1980, Regency experienced financial difficulty and secured two conventional loans from the Bank totalling $1,100,000. As part of the arrangement, the Tavsses and the Sackses as well as Baker and his wife agreed to guarantee payment of all the Bank's loans to Regency, including floor-plan loans. As additional security for the new loans, the Tavsses and the Sackses were required to mortgage some of their own property, including an apartment house in which the Tavsses held a two-thirds interest and the Sackses one-third. The Sackses also mortgaged other real estate they owned.

In 1982, the Bank demanded payment of the balance due on all the Regency loans, then amounting to $4,543,872.27. When the dealership failed to pay, the Bank sold Regency's assets at foreclosure. With credit for the amount received from the sale, a balance of $1,481,555.46 remained unpaid.

The Bank then proceeded to foreclose on the property mortgaged by the Tavsses and the Sackses. After crediting the amounts received in foreclosure, a balance of $1,149,941.09 remained unpaid as of June 24, 1983. Because the Tavsses and the Sackses were jointly and severally liable as guarantors, the Bank merely deducted the proceeds of the sale of the apartment house

property from the total amount due, making no adjustment for the Tavsses' greater interest in the property.

The Bank undertook negotiations with the Tavsses and the Sackses "to close out and settle [the] indebtedness in its entirety."[1] As a result of separate negotiations, the Bank reached agreement with the Tavsses on April 11, 1984, and with the Sackses on May 22, 1984. Under their agreement with the Bank, the Tavsses paid $55,000 in satisfaction of "all [their] obligations . . . as guarantors" of Regency's loans, with the Bank reserving the right to pursue the Sackses for "any of the obligations owed to [the Bank] by Regency." As a result of their agreement with the Bank, the Sackses paid $77,488.77 in satisfaction of "all [their] obligations . . . as guarantors" of Regency's indebtedness. Still, the Bank lost approximately $1,400,000 in the Regency transaction.

The $135,097.93 judgment awarded the Tavsses represents the excess they contributed toward reduction of the Regency indebtednesses when they are credited with two-thirds of the proceeds of the sale of the apartment house property. The Sackses do not question the amount of the judgment; they merely say the Tavsses are not entitled to any contribution.

■ The Sackses argue that the Restatement of Restitution § 82 (1937) applies to this case and supports reversal of the judgment rendered against them. The Sackses point out that under § 82, "[a] person who, with another, is subject to a duty . . . is entitled to contribution from the other when, and only when, he has discharged more than his proportionate share." The only exception to this rule, the Sackses note, is found in comment b to § 82, where it is provided that a party who pays less than his proportionate share of an obligation may yet obtain contribution if he secures "a full release" from the creditor. The Sackses conclude that because the Tavsses neither paid more than their proportionate share nor secured a full release, they are not entitled to contribution.

■ The Tavsses concede that "no obligation for contribution arises until a surety discharges more than his proportionate share." The parties join issue, however, on the method of determining what constitutes a proportionate share in this case. While

---

[1] At some point after Regency failed, the Bakers declared bankruptcy. The Tavsses and the Sackses agree that because the Bakers are insolvent, this case is to be decided as though the Tavsses and the Sackses were the only guarantors.

the Sackses contend that the determination should be made upon the basis of the amount owed the Bank, the Tavsses contend that the determination should be based upon the amount paid in settlement.[2] The Tavsses maintain that their position is supported by the Restatement of Security § 154 comment d (1941). Comment d states:

> Where a surety makes a settlement with a creditor by which the creditor accepts in full satisfaction less than the amount due from the principal and sureties, the cosureties and the principal as well as the paying surety are entitled to the advantage of this settlement . . . . Contribution is thus computed on the amount of the settlement.

The Tavsses also cite *Singleton* v. *Shepherd*, 196 Mo. App. 505, 183 S.W. 1077 (1917), and *Carey* v. *McCaslin*, 43 N.E.2d 519 (Ohio Ct. App. 1942). These cases, the Tavsses say, stand for the proposition that when there is a release of all sureties upon payment of less than the amount of the debt, contribution will not be based upon the amount of the debt but upon the amount of the settlement. The Tavsses analogize their situation to the situations of the paying sureties in *Singleton* and *Carey*. The Tavsses then conclude that since they and the Sackses have obtained releases from liability for Regency's debts and they have paid more than the Sackses, they are entitled to contribution.

The difficulty with the Tavsses' position is that they misinterpret comment d to § 154 of the Restatement of Security and mistakenly analogize their situation to the situations of the paying sureties in *Singleton* and *Carey*. Comment d contemplates that the settlement by one surety for less than the amount of the debt will be in *full satisfaction* of the debt, meaning that the paying surety must secure a release not only for himself but also for his cosurety or cosureties before he can demand contribution based upon the amount of the settlement.

*Singleton* and *Carey* are to the same effect. In *Singleton*, the court disallowed contribution, finding that the plaintiff had neither paid more than his share of " 'the original demand' " nor dis-

---

[2] The Tavsses can win only if the determination of what constitutes a proportionate share is based upon the amount paid in settlement because that amount represents only a fraction of the indebtedness owed the Bank.

charged the whole debt. 196 Mo. App. at 507, 183 S.W. at 1078. In denying a motion for rehearing, the court said:

> [The cases cited by the paying surety] determine . . . that if one of several co-sureties compromises or settles the debt with the creditor for himself and his co-sureties, even though he pays a sum less than would have been his own share of the whole debt as between them, he may demand contribution from them. In each of those cases the plaintiff discharged the entire liability against himself and his co-sureties. In this case, plaintiff settled his own portion of liability but did not settle any of defendant's . . . .

196 Mo. App. at 509, 183 S.W. at 1079.

In *Carey*, the plaintiff paid $1,000 in full satisfaction of a debt of more than $12,000 and sued a cosurety for contribution. The court allowed recovery, stating that "a co-obligor is entitled to contribution from another co-obligor when the former has completely satisfied the obligation, even though in so doing he has paid a sum of money less than his proportionate share of the face amount of the obligation." 43 N.E.2d at 520.

We agree with the Sackses that the determination of what constitutes a proportionate share in this case should be based upon the amount owed the Bank. The Sackses' position is supported not only by the cases of *Singleton* and *Carey* and the Restatements of Restitution and Security but also by Virginia decisions. In *Gordon et als.* v. *Rixey's Adm'r and al.*, 86 Va. 853, 11 S.E. 562 (1890), we said that "[a] surety can only call for contribution when he has paid more than his proportion of *the joint debt*, and then only for the excess." *Id.* at 857, 11 S.E. at 564 (emphasis added). And in *Young* v. *Bowen*, 131 Va. 401, 108 S.E. 866 (1921), we said that "[a] surety is not entitled to a judgment against his co-surety until he has paid more than his part of *the debt of the principal*." *Id.* at 407, 108 S.E. at 868 (emphasis added).

Here, the Tavsses did not make full satisfaction of the indebtedness due the Bank and did not secure a release which covered the Sackses. Indeed, the agreement between the Bank and the Tavsses expressly reserved to the Bank the right to pursue the Sackses for "any of the obligations owed to [the Bank] by Regency." The Sackses had to make their own arrangement with the

Bank before they were relieved from liability for Regency's indebtedness.

The Tavsses argue, however, that it should make no difference that the Sackses secured their release separately. The Tavsses ask: "Should not the same rules . . . apply as though one party had paid the debt and obtained the release from the creditor?" The simple answer is "No." Unless one surety pays more than his proportionate share of the amount owed the creditor or pays less yet secures a release for his cosurety, he has done no more than he was obligated to do in the first place. Hence, there is no reason why equity should intervene to lessen his obligation by awarding him contribution.

We are of opinion that the Tavsses were erroneously allowed contribution from the Sackses. Accordingly, the judgment of the trial court will be reversed, and final judgment will be entered here in favor of the Sackses.

*Reversed and final judgment.*