United States Court of Appeals,

Fifth Circuit.

No. 95-30621.

Sidney R. WILHITE, Plaintiff-Appellant,

v.

H.I. SCHENDLE;  Federal Deposit Insurance Corporation, Defendants-Appellees,

and

James W. Beaver;  James M. Rasbery, Defendants.

Aug. 28, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, EMILIO M. GARZA and PARKER, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff-appellant, Sidney Wilhite, appeals the dismissal of his suit against defendant-appellee, H.I. Schendle, for contribution to a Settlement Agreement made with the Resolution Trust Corporation ("RTC"), the statutory predecessor to defendant-appellee, the Federal Deposit Insurance Corporation ("FDIC").  Wilhite also appeals the dismissal of his cause of action against the FDIC for the return of a portion of his settlement payment.  For the reasons that follow, we AFFIRM the dismissal of the case against both defendants.

## I. BACKGROUND

Sidney Wilhite and H.I. Schendle are both former directors of the Deposit Trust Savings Bank of Monroe, Louisiana ("the Bank").  In 1990, the United States Office of Thrift Supervision closed the Bank and appointed the RTC as receiver.  The RTC investigated the cause of the Bank's failure, and eventually made a demand for compensation from the Bank's former officers and directors.

Following a period of negotiations, the RTC reached a settlement agreement with seven of the former directors and officers of the Bank, including Schendle and Wilhite ("the Settlement Agreement").  The Settlement Agreement provided for a payment by the officers and directors of $750,000 to the RTC in exchange for their discharge from any claims arising from the Bank's trading

practices.  Throughout the negotiation process, Schendle denied liability, and stated that he would refuse to pay any settlement amount.  Nonetheless, Schendle, Wilhite, and the other five directors and officers signed the Settlement Agreement with the RTC.

Wilhite paid the entire $750,000 to the RTC.  He then made arrangements with three of the six remaining directors to receive compensation for their portions of the settlement amount.  After failing to reach agreements with the last three directors, Wilhite filed this suit on June 3, 1993.  He later dismissed one of those defendants to maintain federal diversity jurisdiction, and obtained a default judgment against a second defendant, leaving Schendle as the only remaining defendant.  After an unsuccessful attempt to obtain summary judgment against Schendle, Wilhite amended his complaint and added the RTC as defendant to the suit, seeking the return of three-sevenths of the Settlement proceeds.

The district court heard testimony on the case, and issued a memorandum ruling denying recovery to Wilhite and dismissing his suit with prejudice.  Wilhite filed a timely notice of appeal.

## II. DISCUSSION

Wilhite contends that Schendle should be required to contribute under any of several theories of Louisiana Law, including:  applying of the laws of solidary liability to the Settlement Agreement; subrogation;  "unjust enrichment;"  and "payment of a thing not due."  Alternatively, Wilhite maintains that the FDIC should be required to reimburse him under the theory of "payment of a thing not due." We address each theory of law in turn, reviewing the district court's conclusions of law *de novo,* and its factual findings for clear error.[1]

A. The Nature of the Directors' and Officers' Obligation

Wilhite's first theory of recovery against Schendle is that the Settlement Agreement alternatively created either a "solidary" obligation or a "joint and indivisible" obligation among the Bank's former director's and officers.  Under Louisiana law, either of these types of obligations is enforced under the rules governing solidary liability, and would give Wilhite a right of contribution

---

[1]*Perlman v. Pioneer Ltd. Partnership,* 918 F.2d 1244 (5th Cir.1990).

against Schendle.[2]

In its ruling, the district court found that the Settlement Agreement created neither of these types of obligations, but instead created a "joint and divisible" obligation with no right of contribution. We agree.

In order to have a solidary obligation under Louisiana law, the agreement must demonstrate an express, written intent for the parties to have such an obligation.[3]  Although the words "in solido" or "solidary" are not necessarily required, there may be no doubt as to the parties' intention on this matter.[4]  Applying this strict standard, the Louisiana Supreme Court has determined that while the phrase "we promise to pay" is insufficient to create a solidary obligation, a reference to "our promise to pay" is sufficient to create one.[5]

Wilhite contends that the language of the Settlement Agreement in this case is more akin to the latter phrase, because the Agreement refers to the Bank's directors and officers as a group, and also refers to only one "payment" and one "release."  We disagree.  The portions of the Settlement Agreement cited by Wilhite do not amount to an express stipulation of solidary liability.  In order to create solidary liability, Louisiana law requires more than a solidary "tenor" to an agreement.[6]  Furthermore, paragraph two of the Settlement Agreement specifically provides that:

> "The former officers and directors agree to pay, and hereby pay, and the RTC agrees to receive and hereby acknowledges receipt and sufficiency of the sum of $750,000.00 cash (the "Settlement Proceeds").

If one substitutes the word "we" for "the former officers and directors," it is clear that this language is analogous to the phrase "we promise to pay," and creates a joint obligation among the parties.[7]

---

[2]La.Civ.Code Ann. arts. 1789, 1790.

[3]La.Civ.Code Ann. art. 1796;  *Moreland v. Green,* 501 So.2d 975, 978 (La.App. 2d Cir.), *writ denied,* 504 So.2d 880 (La.1987).

[4]*Id.*

[5]*Johnson v. Jones-Journet,* 320 So.2d 533, 536 (La.1975).

[6]*USX Corp. v. Tanenbaum,* 868 F.2d 1455 (5th Cir.1989).

[7]*Johnson,* 320 So.2d at 536.

Under Louisiana law, such a joint obligation may be either "divisible," or "indivisible," depending on the nature of the object of performance and the intention of the parties. The obligation is "divisible" if the object of performance is susceptible of division.[8] It is "indivisible" if the object of performance is incapable of division or if the parties intend to make an otherwise divisible performance indivisible.[9] In this case, the directors' and officers' obligation under the Settlement Agreement was a financial payment to one entity. We agree with the district court that by nature, such a monetary payment is susceptible of division. Wilhite maintains, however, that the Settlement Agreement demonstrates an intent to make the financial obligation "indivisible" among the directors and officers.

We look to the Settlement Agreement as a whole to determine the intent of the parties on this issue.[10] As previously discussed, paragraph two demonstrates an intent to avoid a solidary obligation. Wilhite argues, however, that other provisions in the Settlement Agreement show the intent to make the joint obligation "indivisible." He first relies on the language of paragraphs three and four, which read as follows:

> "3. In consideration of the payment of the Settlement Proceeds, the RTC does hereby release and discharge the former officers and directors ..."

> "4. In consideration of the release granted herein above by the RTC, the former officers and directors hereby release and discharge the RTC in all its various capacities...."

According to Wilhite, this language makes it clear that only one performance (the "Settlement Proceeds") is expected by the RTC, and in return only one performance (a general "release" of liability) is given by the RTC. Wilhite maintains that the obligation must therefore be "indivisible". In effect, he argues that one performance by law cannot be made up of divisible parts. This argument is weak and somewhat circular. Although the "Settlement Proceeds" is a singular mass, the agreement to pay in paragraph two provides that sum will be paid by the plural "officers and directors." Thus, language regarding a "singular" performance still offers no insight into whether the

[8]La.Civ.Code Ann. art. 1815.

[9]*Id.*

[10]*Stockstill v. Byrd,* 132 La. 404, 61 So. 446 (La.1913).

parties responsible for that performance intended it to be divisible. Further, the nature of the return obligation on behalf of the RTC is on its face capable of division. The singular "release" of liability given to the seven directors is clearly capable of division into seven individual releases of liability. Thus, these provisions do not support Wilhite's argument.

Wilhite also argues that paragraph six of the Settlement Agreement evidences the necessary intent. That provision reads as follows:

> "6. Nothing in this Agreement shall be interpreted as a bar to any rights of the former officers or directors to indemnification or contribution from any other former officer or director as a consequence of their respective payments to the RTC in connection with this Agreement, nor shall it be construed as an expansion of any rights which may exist in the absence of this Agreement."

Wilhite insists that this clause leads to the conclusion that the parties intended to make the obligation "indivisible." He contends that this clause creates the right to seek indemnification or contribution from the other former directors and officers signing the Settlement Agreement. We disagree. The language, "nothing in this Agreement shall be interpreted as a bar to any rights ... to indemnification or contribution as a consequence of their respective payments to the RTC ..." does not indicate that it is *creating* new rights within the Agreement. Instead, the passive language leads us to conclude that the paragraph merely *preserves* rights that may exist outside of the Settlement Agreement. This conclusion is bolstered by the additional language, "nor shall [the Agreement] be construed as an expansion of any rights which may exist in the absence of this Agreement." That language specifically indicates that paragraph six does *not* create new rights of contribution.

In sum, there is no evidence that the directors and officers intended their obligation to the RTC to be indivisible. The district court correctly concluded that the Settlement Agreement created a "joint and divisible" obligation for the Bank's directors and officers, and that there is therefore no right of contribution among them.

B. Subrogation Rights between Wilhite and Schendle

As an alternative theory of recovery, Wilhite argues that if the obligation is "joint and divisible," Wilhite should still be able to recover through the theory of subrogation, or the substitution of one person for the rights of another. Under Louisiana law, subrogation may occur either by

"conventional" or "legal" means.[11] "Conventional" subrogation occurs when an obligee receives performance from a third person and in express terms subrogates that person to the rights of the obligee, even without the obligor's consent.[12] "Legal" subrogation takes place by operation of law in favor of an obligor who pays a debt he owes with others and who has recourse against those others as a result of the payment.[13]

1. Conventional Subrogation.

The district court held that because Wilhite was also an obligor to the RTC, and had already extinguished the debt to the RTC, he could not seek "conventional" subrogation against Schendle. The court based its conclusion on Louisiana Civil Code article 1854, which provides that "performance by the obligor extinguishes the obligation." This interpretation is correct. Wilhite and Schendle were liable for the same "obligation," although in divisible portions. As such, article 1854 applies. Because Wilhite was an obligor, and paid the obligation, he cannot now be a third party to that same obligation, and seek subrogation from another obligor.

In addition, under Louisiana law, third party subrogation can not arise unless "so provided by law or by agreement".[14] Wilhite argues that paragraph six provides the necessary authorization to pursue conventional subrogation. As discussed above, however, paragraph six is merely meant to preserve pre-existing rights, not to create new ones. Thus, Wilhite has no right to conventional subrogation against Schendle.

2. Legal Subrogation.

The five instances in which "legal" subrogation may occur are specifically listed in La.Civ.Code art. 1829. The only instance that is applicable to this case is the third one:

> "[Subrogation takes place by operation of law] in favor of an obligor who pays a debt he owes with others or for others and who has recourse against the others as a result of the payment."

---

[11]La.Civ.Code Ann. art. 1825.

[12]La.Civ.Code Ann. art. 1827.

[13]La.Civ.Code Ann. art. 1829.

[14]La.Civ.Code Ann. art. 1855.

The district court found that this section did not apply because the Settlement Agreement did not include a right to contribution among the directors and officers, and therefore the required "recourse against the others" was absent. For the reasons previously discussed, we agree with the district court's interpretation of the Settlement Agreement.

Furthermore, we find that regardless of the content of the Settlement Agreement, legal subrogation would not apply to this case. Under Louisiana law, where there is no solidary liability, any right to contribution must arise out of the rights of the common creditor.[15] In this case, the RTC did not subrogate its rights against the non-paying signatories to the only paying signatory, Wilhite. Therefore, Wilhite could have no right of contribution or subrogation against his co-debtors. To find otherwise would allow one party to transform a joint and divisible obligation into a solidary obligation by the mere application of the legal subrogation statute. This interpretation would make the distinction between divisible and indivisible meaningless. Therefore, we find that Wilhite has no subrogation rights against Schendle.

C. "Unjust Enrichment"

Wilhite's third theory of recovery against Schendle is that of "unjust enrichment." As described by the Louisiana Supreme Court in *Minyard v. Curtis Products, Inc.,*[16] an individual can recover from another under this theory if he proves: 1) the enrichment of the other party; 2) an impoverishment; 3) a connection between the enrichment and the impoverishment; 4) an absence of cause for the enrichment and impoverishment; and 5) the lack of any other remedy at law.[17]

In this case, the district court made a finding of fact, based on Wilhite's trial testimony, that Wilhite would have paid the full $750,000.00 to the RTC even if Schendle was not a party to the compromise. This finding of fact is not clearly erroneous, particularly since it is based on Wilhite's personal trial testimony and Wilhite has offered no evidence tending to show that his statements were misinterpreted.

---

[15]*Perkins v. Scaffolding Rental & Erection, Inc.,* 568 So.2d 549 (La.1990).

[16]205 So.2d 422, 432 (La.1967).

[17]*Id.*

Based on its finding of fact, the district court concluded that the theory of "unjust enrichment" did not apply to this case because Wilhite had not suffered an "impoverishment," and because there was no connection between Schendle's "enrichment" and Wilhite's "impoverishment". We find no error in this analysis.

D. "Payment of a Thing Not Due"

Finally, Wilhite contends that both Schendle and the FDIC should be held liable under the theory of "payment of a thing not due." This cause of action is based on Louisiana Civil Code article 2310, which provides:

> "He who, through mistake has paid the debt of another to whom he believed himself indebted, has a claim to restitution from the creditor.
>
> "This right ceases, if, in consequence of the payment, the creditor has destroyed or parted with his title; but the recourse still remains open to the person paying as against the true debtor."

This cause of action is inapplicable to Wilhite's claim against Schendle. The district court made a finding of fact that Wilhite did not "believe himself to be indebted" to the RTC for Schendle's share, and therefore held that article 2310 is inapplicable to Wilhite's claim against Schendle.

This factual finding is not clearly erroneous. Wilhite has consistently testified that, at the time he entered into the Settlement Agreement, he believed he had a right to recover from the other signatories. This testimony is directly contrary to the Article 2310 requirement that Wilhite "believe himself indebted" for Schendle's share. As such, the district court correctly dismissed Wilhite's claim against Schendle under this provision.

In addition, Wilhite does not have a claim against the FDIC. Louisiana courts have consistently interpreted the language of Article 2310 to prohibit the party making a mistaken payment from seeking restitution from the creditor-recipient if the creditor has lost the right to proceed against the true debtor.[18] This "destroyed title" can occur if the creditor has already completed its

---

[18] *Premium Finance Specialists, Inc. v. International Surplus Lines Ins. Co.,* 938 F.2d 50 (5th Cir.1991); *A.V. Smith Const. Co. v. Maryland Casualty Co.,* 422 So.2d 697 (La.App. 3d Cir.1982).

performance under the contract as a result of the actions of the mistaken party,[19] or if the mistaken party has let his own claim against the true creditor lapse.[20]  In this case, because of Wilhite's payment, the RTC released Mr. Schendle from any liability arising out of his management of the bank. Because of this release, the FDIC no longer "has title" to the alleged overpayment made by Wilhite. Therefore, Wilhite cannot seek reimbursement under Article 2310.

We note that Wilhite's claim against the FDIC also fails because his attack on the Settlement Agreement is based on an error of law.  Under the Louisiana Civil Code Article 3078, a transaction or compromise "cannot be attacked on account of any error of law."[21]  The district court made a specific finding of fact that, at the time Wilhite entered into the Settlement Agreement, he erroneously believed he had a right to recover from the other signatories.  We find no error in this factual finding, and agree that Wilhite's error constitutes an "error of law" such that he cannot now attack the transaction.

Wilhite attempts to distinguish his particular mistake by arguing that his error was made in the course of *complying* with the agreement, rather than an error made in the *creation* of the agreement itself.  As support for his theory, he cites the Louisiana Supreme Court's decision in *Brown v. Drillers, Inc.,*[22] which stated that Article 3078 was intended to apply to situations in which a party is seeking *rescission* of a compromise, and not to situations in which the *construction* of the compromise is being challenged.[23]

In *Brown,* a deceased worker's widow brought a wrongful death action which the defendants

---

[19]*Premium Finance,* 938 F.2d 50 (where the premiums for an insurance policy were mistakenly paid twice, but insurer had completed its "performance" of keeping insurance policy in effect and paying claims on it, the insurer sufficiently "parted with its title" to remove the right to restitution).

[20]*A.V. Smith,* 422 So.2d 697 (contractor who mistakenly reimbursed school board for damage done to school building by a subcontractor may have lost right to seek reimbursement from school board by allowing claim against subcontractor to prescribe).

[21]La.Civ.Code Ann. art. 3078;  *Campbell v. Roman Catholic Church,* 490 So.2d 798 (La.App. 3d Cir.), *writ denied,* 494 So.2d 1175 (La.1986).

[22]630 So.2d 741, 755 (La.1994).

[23]*Id.*

sought to set aside based on an earlier release of liability signed by the widow and the deceased before the worker died.[24] The court found that the parties had not clearly contemplated that the release would cover rights accruing after the future death of the worker, and that therefore the widow could not have intended to release that claim as well.[25] Thus, *Brown* was not seeking to rescind the earlier compromise, but challenged the intended scope of that compromise.[26] In this situation, the court held that Article 3078 did not apply.[27]

Wilhite argues, that like the widow in *Brown,* he does not wish to set aside the Settlement Agreement, but merely wishes to have it enforced "according to its terms." The two cases are not particularly analogous, however. The distinction made by the Supreme Court is that Mrs. Brown's mistake was not an "error in law," in that she and her husband did not misunderstand what rights Louisiana law gave her at the time of her husband's injury. The error was one of "construction," in that she did not understand that the scope of the release was also intended to apply to rights she might accrue in the future, after the intervening event of her husband's death. In contrast, the present agreement is a true "error of law," in that Mr. Wilhite did not misunderstand the scope of the Settlement Agreement. Wilhite understood that seven directors, including himself, would be released from liability to the RTC for acts arising out of their management of the Bank, if the RTC received a total of $750,000 from the seven men. What Wilhite misunderstood was the nature of his legal rights under Agreement. Thus, *Brown* does not apply to this case.

As further support for his argument, Wilhite notes that all the cases applying Article 3078 address situations in which the settling party agreed to the settlement based on a mistaken belief that *that party* was liable for the claim being compromised.[28] Of course, in this case, Wilhite does not

---

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]*Id.*

[28]See *Aetna Casualty and Surety Co. v. Landry,* 578 So.2d 537 (La.App. 3d Cir.1991) (insurer made error of law in deciding that mother of decedent had paramount rights over the decedent's illegitimate child and could not set aside compromise made with mother); *Campbell,* 490 So.2d

challenge his actual liability to the RTC. Instead, Wilhite seeks recovery because he agreed to the Settlement Agreement on the mistaken belief that the *other directors* were liable for the claim compromised. The distinction between this situation and that of the other cases applying Article 3078 is of no consequence. The language of the code article does not distinguish between specific types of "error in law," and nothing in the case precedent indicates that there should be such a distinction.

Finally, we note that even if Wilhite's mistake was not an "error of law," but one of fact, the "factual" error was unilateral, and caused by the carelessness of Wilhite's own attorneys and advisors. Under Louisiana law, a compromise cannot be attacked or set aside based upon a unilateral error of fact resulting from the party's own carelessness.[29] Therefore, we find that Wilhite cannot seek recovery from the FDIC due to his misunderstanding of the Settlement Agreement with the RTC.

We AFFIRM the dismissal of Wilhite's suit against Schendle and the FDIC.

---

800 (a party unaware of forced heirship rights in Louisiana who settles a claim agreeing not to contest her mother's will cannot attack the compromise).

[29]*Sellers v. Corne, Sellers and Associates, Inc.,* 649 So.2d 1181 (La.App. 3d Cir.1995).