Donald J. HUMPHREY, Plaintiff–
Appellee and Cross–Appellant,

v.

Terrence J. O'CONNOR, Defendant–
Appellant and Cross–Appellee.

No. 95CA1058.

Colorado Court of Appeals,
Div. IV.

Oct. 10, 1996.

Rehearing Denied Nov. 14, 1996.

Certiorari Denied July 28, 1997.

Vanderwerf & Lipinsky, P.C., Lino S. Lipinsky de Orlov, Denver, for Plaintiff–Appellee and Cross–Appellant.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Darrell G. Waas, David P. Hutchinson, Denver, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge CASEBOLT.

In this action between former members of a joint venture, defendant, Terrence J. O'Connor, appeals the summary judgment entered in favor of plaintiff, Donald J. Humphrey, on Humphrey's claim for common law contribution concerning the settlement of a joint venture debt to the Resolution Trust Corporation (RTC). Humphrey cross-ap-

peals, asserting that the trial court erred in granting O'Connor's motion for judgment on the pleadings directed to Humphrey's additional claim for unjust enrichment. We reverse and remand with directions.

Humphrey and O'Connor were joint venturers in the Gunpark Joint Venture (Gunpark). Humphrey owned a four percent share and O'Connor the remaining ninety-six percent. The parties' joint venture agreement provided that Humphrey and O'Connor would share the net profits and losses of Gunpark in the same proportion as their ownership percentages.

Gunpark obtained loans from a savings and loan association in the original amount of $4.2 million, secured in part by property owned by the joint venture. Humphrey and O'Connor were co-makers of the promissory note. Gunpark thereafter defaulted on the loans and the RTC, as receiver for the savings and loan, commenced a foreclosure on the property. After foreclosure, a deficiency of $4.7 million remained. Humphrey and O'Connor were jointly and severally liable for the entire amount of the deficiency.

The RTC, Humphrey, O'Connor, and Gunpark then entered into a settlement agreement. Under the agreement, Humphrey pledged to make payments to the RTC totaling $150,000 in exchange for a release to him from further liability. O'Connor agreed to make payments to the RTC totaling $35,000 to secure his own release. The agreement enabled each joint venturer to satisfy his own individual liability without regard to the other's monetary performance and also provided that each party would remain liable for the entire $4.7 million deficiency until that party satisfied his own settlement obligations. Both Humphrey and O'Connor complied with their respective settlement obligations.

Thereafter, Humphrey commenced this action. As pertinent here, Humphrey only asserted claims for unjust enrichment and common law contribution to recover from O'Connor the amount by which Humphrey's settlement payment exceeded four percent of the total settlement payment of $185,000. The trial court granted Humphrey's motion for summary judgment on the contribution claim based on its finding that the settlement

agreement included a provision waiving O'Connor's right to object to the claim. Correspondingly, the trial court denied O'Connor's motion for judgment on the pleadings on the contribution claim. However, it granted O'Connor's motion for judgment on the pleadings on Humphrey's claim for unjust enrichment. This appeal followed.

## I.

O'Connor first contends that the trial court erred in construing a neutral reservation-of-rights clause as compelling contribution and waiving his common law defenses to Humphrey's contribution claim. We agree.

The pertinent provision of the settlement agreement provides:

> *Waiver of Subrogation.* Until all of the Humphrey payment obligations have been satisfied and all of the O'Connor payment obligations have been satisfied, none of the Borrowers shall have any right of subrogation, indemnification, or contribution against the others for amounts paid to the RTC under this Agreement or any right to enforce the terms of this Agreement against another Borrower. Nothing herein contained shall preclude any of the Borrowers from exercising rights of subrogation, indemnification, or contribution against one or more of the other Borrowers after full satisfaction of both the Humphrey payment obligations and the O'Connor payment obligations.

Humphrey asserts that this clause bestowed an unconditional right to contribution upon him and functioned as O'Connor's affirmative waiver of any objection to Humphrey's contribution claim. O'Connor contends that this paragraph served only to preserve the status quo until the parties satisfied their obligations under the settlement agreement. The trial court adopted Humphrey's interpretation, concluding that "the court is not in a position to deprive [Humphrey] of his rights under an agreement made with [O'Connor]. By the terms of the [settlement] agreement, [O'Connor] has waived his objection to [Humphrey's] contribution claim."

Interpretation of a written contract is a question of law subject to *de novo* review. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo.1990). Hence, we need not defer to the trial court's interpretation. *Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994).

Contracts should be construed to give effect to the intent of the parties. *In re Marriage of Thomason,* 802 P.2d 1189 (Colo. App.1990). Contractual terms should be given their generally prevailing meaning and an integrated contract should be viewed in its entirety with the end of seeking to harmonize and give effect to all provisions. *Central Bank v. Deloitte & Touche,* 928 P.2d 754 (Colo.App. 1996).

The word "until" is typically used as a function word to indicate continuance up to a particular time. *See Webster's Third New International Dictionary* 2513 (1986). Hence, under the agreement, there would be no right of contribution as long as any of the payment obligations remained unsatisfied.

Once full satisfaction of the payment obligations occurred, the paragraph specified that "nothing ... shall preclude [the] exercis[e]" of contribution rights. This direction is, in our view, merely an enabling provision that does not grant or confer an automatic, absolute right of contribution, nor does it constitute a waiver of any defenses. "Exercise" in this context equates to "assertion," and the presence of the word connotes a choice or option, not an unconditional grant of an incontestible right.

Essentially, the disputed paragraph is a reservation of each borrower's rights, whatever they may be, against the other, to be held in abeyance pending performance of their respective settlement obligations to the RTC. Neither borrower waived his rights or defenses against the other; rather, each merely deferred his right to proceed against the other until both had performed their individual obligations to the RTC.

Our interpretation is supported by the Fifth Circuit's recent explication of a similar paragraph in an RTC settlement agreement in an opinion not yet rendered when the trial court ruled in this case. In *Wilhite v. Schen-*dle, 92 F.3d 372 (5th Cir.1996), a former bank director sought contribution against a non-paying director for a portion of the amount paid to the RTC under a settlement agreement. The paragraph in the *Wilhite* case similar to the one at issue here specified that: "[N]othing in this Agreement shall be interpreted as a bar to any rights of the former officers or directors to indemnification or contribution from any other former officer or director as a consequence of their respective payments to the RTC in connection with this Agreement...."

The *Wilhite* court disagreed with the plaintiff's assertion that the paragraph in question created a right of contribution from the other former directors who had signed the settlement agreement. Rather, the court found that the paragraph "does not indicate that it is creating new rights within the Agreement" and concluded that "the passive language ... [of] the paragraph merely preserves rights that may exist outside the Settlement Agreement." *Wilhite v. Schendle, supra* 92 F.3d at 376.

Accordingly, because we conclude that the trial court's reading of the paragraph at issue was erroneous, O'Connor did not waive his right to assert common law defenses to Humphrey's contribution claim, nor did the agreement grant an unconditional right of contribution to Humphrey as a matter of contractual interpretation. Consequently, the trial court's summary judgment based upon its interpretation of the agreement cannot stand.

## II.

Nonetheless, Humphrey asserts that the summary judgment was correctly entered because, based on the undisputed facts, he was entitled to common law contribution as a matter of law, since he paid more than his proportionate share of the settlement amount. In opposition, O'Connor asserts that Humphrey may not obtain contribution as a matter of law because Humphrey did not pay more than his proportionate share of the $4.7 million deficiency or pay a lesser amount and secure a release of O'Connor with that settlement payment. We agree with O'Connor.

Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cung La v. State Farm Automobile Insurance Co.*, 830 P.2d 1007 (Colo.1992). The burden is on the moving party to establish that no genuine issue of fact exists and any doubts in this regard must be resolved against the moving party. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

Our review of a summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board, supra.* Similarly, the correctness of legal conclusions based on undisputed facts is a question of law subject to our independent review on appeal. *Evans v. Romer*, 854 P.2d 1270 (Colo.1993), *cert. denied*, 510 U.S. 959, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993); *Frank C. Klein & Co. v. Colorado Compensation Insurance Authority*, 859 P.2d 323 (Colo.App. 1993).

Here, the parties assert, and we agree, that there are no genuine issues of material fact. Therefore, the only issue is whether the applicable law supports the determination that Humphrey was entitled to common law contribution as a matter of law.

Common law contribution is designed to apportion the loss between two or more persons liable for harm caused to a third party. The right to contribution is the right of one who has discharged a common liability to recover from another who is also liable. *Daybreak Construction Specialties, Inc. v. Saghatoleslami*, 712 P.2d 1028 (Colo. App.1985). Generally, common law contribution presumes the payment and extinguishment of the debt by one for the benefit of all. *Gardner v. Bean*, 677 P.2d 1116 (Utah 1984).

No Colorado case has addressed the specific question whether contribution rights must be based on the joint debtors' original common liability or upon the lesser amount of an aggregate settlement satisfying the original liability. In the present case, O'Connor asserts that contribution rights arise only when one obligor pays a disproportionate share of the original common liability, or pays less yet secures a release for his co-obligor. O'Connor therefore argues that Humphrey is not entitled to contribution because he did not pay more than his proportionate four percent share of the $4.7 million common liability—$188,000—or pay a lesser amount and secure a release for O'Connor.

Humphrey argues that the common liability should be viewed as the total settlement amount of $185,000 paid to the RTC, rather than the original $4.7 million liability. Under Humphrey's reasoning, in paying $150,000 of the $185,000 settlement, he paid $142,600 in excess of his four percent share of the loss.

The Virginia Supreme Court addressed a similar issue in *Sacks v. Tavss*, 237 Va. 13, 375 S.E.2d 719 (1989). There, two guarantors of a $1.4 million corporate debt settled their obligations with a creditor for an aggregate amount of approximately $132,000. The plaintiffs paid a settlement amount of $77,000 and secured a release only for themselves. Defendants paid $55,000 and likewise obtained only a release of their individual liability. Plaintiffs sued for contribution based on their allegedly disproportionate payment.

The court rejected the plaintiffs' claim, concluding that contribution is available only when one surety pays either: (1) more than that surety's proportionate share of the original amount owed the creditor; or (2) pays less yet secures a release not only for himself or herself, but also for the cosurety. The *Sacks* court reasoned that, until one of the two conditions has occurred, the surety has done no more than satisfy his own, original obligation.

The *Sacks* court relied, in part, upon the Restatement of Restitution (1937) concerning contribution. Restatement of Restitution § 81 (1937) provides, in pertinent part, that:

> Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another ... is entitled to contribution from the other....

As noted in comment b to that section, the rule applies when the parties are jointly liable and when they are severally liable. Fur-

thermore, it applies when both are parties to a single or separate document and when the parties have equal or unequal shares in an enterprise out of which the obligation arises.

Restatement of Restitution § 82 (1937) details when a right to contribution arises, stating that: "A person who, with another, is subject to a duty . . . is entitled to contribution from the other when, and only when, he has discharged more than his *proportionate share* . . . ." (emphasis added) Comment b to that section indicates:

If the payor secures a full release from the creditor by paying a less sum or by transferring property of less value than the amount of obligation, the amount due from each of the co-obligors is thereby diminished . . . but the payor is entitled to contribution although the amount thus paid is less than what was originally his proportionate share.

Although the Restatement does not specify whether the "proportionate share" is measured against the amount of the original obligation or against the amount of an aggregate settlement, we conclude that comment b to Restatement § 82 illustrates, by necessary implication, that the "proportionate share" is measured against the amount of the original obligation and not the lesser amount of a settlement. Thus, when paying less than the original obligation amount, only when a co-obligor secures the full release of another co-obligor is the first co-obligor entitled to contribution based on the settlement amount. Case law from other jurisdictions provides support for this analysis. In *Carey v. McCaslin,* 36 Ohio Law Abs. 339, 43 N.E.2d 519 (Ohio App.1942), a cosurety fully satisfied a $12,000 debt by paying $1,000. The court allowed recovery on a contribution claim against the other cosurety, stating that "a co-obligor is entitled to contribution from another co-obligor when the former has *completely satisfied the obligation,* even though in so doing he has paid a sum of money less than his proportionate share of the face amount of the obligation." *Carey v. McCaslin, supra,* at 520 (emphasis added).

In *Singleton v. Shepherd,* 196 Mo.App. 505, 183 S.W. 1077 (1916), the court did not permit contribution when the plaintiff had not paid more than his share of the original debt or discharged the entire obligation; rather, it stated that contribution was improper because the plaintiff settled his own portion of liability but did not settle any of defendant's.

Similarly, in *Falb v. Frankel,* 73 A.D.2d 930, 423 N.Y.S.2d 683 (1980), the court found no right of contribution when one co-guarantor of a $450,000 debt discharged his liability for $57,000 without securing the other co-guarantor's release, while the other co-guarantor settled his obligation for $25,000. The court ruled that no contribution is due when one cosurety discharges his liability for less than his portion of the original debt. *See also Gardner v. Bean, supra* (a co-guarantor cannot bring an action or suit for contribution until he has paid more than his share of the guaranteed debt).

We are persuaded by the above authorities and therefore hold that no right of common law contribution exists for a co-obligor unless the co-obligor pays more than his or her proportionate share of the original common liability. Further, no right of contribution exists for payment of an amount less than the face amount of the original common liability unless the co-obligor secures a release of the other co-obligor.

Here, the common liability of Humphrey and O'Connor consisted of the $4.7 million deficiency due the RTC. Humphrey's proportionate share of the deficiency was four percent, or $188,000. Because Humphrey's $150,000 payment to the RTC did not exceed his proportionate share of the original common liability, Humphrey is not entitled to common law contribution from O'Connor.

Further, the aggregate settlement payments of $185,000 did not represent the *common obligation* of Gunpark or Humphrey and O'Connor, nor did the individual settlement obligations of O'Connor and Humphrey. Humphrey had an independent obligation under the settlement agreement to pay $150,000, while O'Connor had an independent obligation to pay $35,000. The only *common* obligation here was the deficiency amount for which both parties were fully liable until the settlement agreement was performed. Moreover, Humphrey is not entitled to con-

tribution based on the lower amount of the $185,000 settlement with the RTC, because he did not secure a release of O'Connor from the $4.7 million deficiency. Under the RTC settlement agreement, Humphrey agreed to make payments totaling $150,000 in exchange for his release from the RTC. O'Connor, however, also had an independent obligation to pay $35,000 in order to secure his release of liability for the remainder of the deficiency. Therefore, because Humphrey's payments did not release O'Connor from liability for the original common liability, Humphrey is not entitled to common law contribution for the settlement amount.

Humphrey, nevertheless, asserts that the settlement agreement here contained "joint releases" that discharged all claims, liabilities, and indebtedness arising out of the joint venture's loan. We disagree.

The settlement agreement, though involving a single transaction and evidenced by a single document, specifically sets out and recites separate releases to Humphrey and O'Connor and specifies a sum due from each that is independent of the other's monetary obligation. The parties did not jointly undertake to pay the RTC $185,000; instead, each agreed to be responsible for his own settlement amount. Even though both releases are contained in the same document, they are not joint releases, but rather designate each party separately in return for that party's itemized payment. Thus, they are separate and independent undertakings.

Accordingly, we conclude that, as a matter of law, Humphrey is not entitled to common law contribution from O'Connor.

### III.

■ On cross-appeal, Humphrey asserts that the trial court erred in granting judgment on the pleadings for O'Connor on Humphrey's claim of unjust enrichment. We agree.

■ In considering a motion for judgment on the pleadings, a court must construe the allegations of the pleadings strictly against the movant, must consider the allegations of the opposing parties' pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings. *See Strout Realty, Inc. v. Snead,* 35 Colo.App. 204, 530 P.2d 969 (1975).

This standard is essentially consistent with that employed in resolving a motion to dismiss for failure to state a claim, *see Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981), and our review of a trial court's determination of such a motion is *de novo. See Abts v. Board of Education,* 622 P.2d 518 (Colo.1980).

■ Motions for judgment on the pleadings, therefore, are viewed with disfavor and will be affirmed only if it appears beyond doubt that the party can prove no set of facts in support of the claim which would entitle the party to relief. The allegations of the complaint must also be viewed in the light most favorable to the non-moving party. *Dunlap v. Colorado Springs Cablevision, Inc.,* 829 P.2d 1286 (Colo.1992).

■ To recover under a theory of quasi-contract or unjust enrichment a plaintiff must show that: (1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value. Application of the doctrine does not depend upon the existence of a contract, express or implied in fact, but on the need to avoid unjust enrichment of the defendant notwithstanding the absence of an actual agreement to pay for the benefit conferred. The scope of this remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another. *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093 (Colo.1982).

Here, Humphrey's complaint asserted that: "O'Connor has accepted and appreciated the amount by which Humphrey overpaid his proportionate share of the total settlement with RTC ... [and that] it would be unfair, unjust, and inequitable for O'Connor to retain the amount by which Humphrey

overpaid his proportionate share of the total settlement with RTC."

The trial court held that, although both parties did benefit in settling with the RTC, there was no unjust enrichment because the benefit was mutual to the parties. The trial court further found that O'Connor was not unjustly enriched because Humphrey's payment did not diminish O'Connor's liability to the RTC.

Viewing the allegations of the complaint in the light most favorable to Humphrey, we conclude that Humphrey could conceivably present a set of facts that might entitle him to recover upon an unjust enrichment theory separate and apart from his common law contribution claim.

First, we note that the trial court's finding does not construe Humphrey's claim in the light most favorable to him, and thus, the court did not apply the correct legal standard. Moreover, the payment distribution between Humphrey and O'Connor in the settlement—which was not in direct proportion to their ownership interest in the joint venture—could be viewed as evidencing a benefit to O'Connor. The fact that both parties received a "mutual benefit" from settling with the RTC, and that Humphrey is not entitled to common law contribution from O'Connor, does not necessarily preclude Humphrey's ability to show some set of facts to support a claim of unjust enrichment.

Additionally, Humphrey characterizes the "benefit" to O'Connor not only as the amount of Humphrey's asserted overpayment to the RTC, but also as Humphrey's participation itself in the settlement agreement. Humphrey contends that, without his participation, O'Connor would not have received the benefit of being able to settle his indebtedness to the RTC. Again, if proven, such facts may give rise to an equitable claim for unjust enrichment.

Accordingly, because the trial court did not apply the correct standard for determining the motion for judgment on the pleadings, and because Humphrey may be able to prove a set of facts that may entitle him to recovery, we conclude that the trial court erred in dismissing Humphrey's unjust enrichment claim.

The trial court's summary judgment in favor of Humphrey on his claim for common law contribution is reversed, and the cause is remanded with directions to enter judgment in favor of O'Connor. The trial court's judgment of dismissal of Humphrey's unjust enrichment claim is also reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

NEY and DAVIDSON, JJ., concur.