Joseph F. COLANTUNO, Petitioner,

v.

A. TENENBAUM & COMPANY, INC., and John P. Dikeou, Respondents.

No. 00SC56.

Supreme Court of Colorado, En Banc.

May 21, 2001.

Steve A. Miller, P.C., Denver, CO, Attorney for Petitioner.

Aronowitz & Ford, LLP, Timothy C. Ford, Denver, CO, Attorneys for Respondent A. Tenenbaum & Company, Inc.

Lance P. Vanzant, Denver, CO, Attorney for Respondent John P. Dikeou.

Justice RICE delivered the Opinion of the Court.

We issued a writ of certiorari to review the court of appeals' judgment in *A. Tenenbaum & Co., Inc. v. Colantuno,* 3 P.3d 456 (Colo. App.1999). This appeal arose from a suit brought by A. Tenenbaum & Company, Inc. ("Tenenbaum") against Robert Isham, Joseph Colantuno and John Dikeou for failing to pay on a promissory note. After the trial court entered judgment against the defendants, both on the promissory note debt and for attorney fees, Tenenbaum released Isham from all liability in consideration of a payment Isham had made. Tenenbaum then filed a motion for supplemental attorney fees. The trial court entered a judgment against Colantuno and Dikeou for the supplemental fees without apportioning the fees between the two or considering the effect of Tenenbaum's releasing Isham from liability. The court of appeals affirmed the trial court's award of supplemental attorney fees but reversed the judgment to the extent that it did not apportion those fees.

We granted certiorari to determine whether the Colorado Joint Rights and Obligations Act (the "Act") requires that a joint debtor's

proportionate share of indebtedness on a promissory note imposing joint and several liability be calculated on a percentage interest basis or on a per capita basis when one debtor settles with the creditor. We also granted certiorari to determine whether the Act applies to all debtors implicated by an action, or only to judgment debtors.

We now affirm the court of appeals and hold that a joint debtor's proportionate share of indebtedness under the Act should be calculated on a per capita basis. We further hold that such a calculation should not consider a debtor who settled prior to a suit, when the judgment at issue is for attorney fees generated after the suit.

## FACTS AND PROCEDURAL HISTORY

In January 1996, a trial court entered a judgment in favor of Tenenbaum for liability on a promissory note executed by E & A Associates ("E & A"). The judgment was entered against Robert Isham, Joseph Colantuno and John Dikeou, who were former partners of E & A. Another former partner, Robert Silverberg, had previously satisfied his pro rata share of the note debt by making a payment to Tenenbaum, and was thus not named as a defendant in the suit. The trial court determined that Tenenbaum was entitled not only to payment on the promissory note itself, but also to attorney fees incurred while pursuing collection on the note.

In May 1996, the trial court awarded Tenenbaum attorney fees for legal services he had received between February 1993 and December 1995. Later that year, Tenenbaum released Isham from liability for both the note debt and the attorney fees in exchange for a $450,000 payment.

In June 1997, Tenenbaum filed a motion for supplemental attorney fees incurred from January 1996 through March 1997. The trial court awarded Tenenbaum judgment on these supplemental attorney fees, but against only Colantuno and Dikeou. The award did not apportion the fees between the two, nor did it consider the effect of Tenenbaum's releasing Isham from liability. Colantuno and Dikeou appealed the award, arguing in part that the trial court had erred by failing

to apportion the attorney fee award as required under section 13–50–103, 5 C.R.S. (2000).

The court of appeals affirmed in part and reversed in part, holding that the judgment of attorney fees was properly awarded to Tenenbaum, but that it should have been apportioned pursuant to section 13–50–103. The court reasoned that the promissory note had originally imposed joint and several liability on the defendants for attorney fees, but that such liability was severed by operation of law under section 13–50–103, when Tenenbaum released Isham from liability. *Colantuno*, 3 P.3d at 458–59. The court held that because Isham's release included attorney fees, he was deemed to have satisfied his proportionate share of any liability for such fees. *Id.* Thus, the court concluded that Colantuno and Dikeou were each only liable for their proportionate share of the attorney fees judgment, and were not jointly liable for the entire deficiency. *Id.*

The court determined that Colantuno and Dikeou's proportionate shares of the supplemental attorney fee judgment were to be calculated by dividing the award by the number of judgment debtors who were formerly jointly and severally liable, that is, Isham, Colantuno and Dikeou. *Id.* In doing so, the court effectively utilized a per capita apportionment schedule. *Id.* The court noted that any perceived inequity in this approach would be ameliorated by the ability of the debtors to sue one another for contribution. *Id.* at 460. The court concluded that Isham, Colantuno and Dikeou's proportionate shares should be determined without considering Silverberg, because he was never a judgment debtor to Tenenbaum, and the fees at issue were generated in pursuit of collection only against Isham, Colantuno and Dikeou. *Id.* Thus, because Isham was deemed to have satisfied his share of the judgment, the court held that Tenenbaum was entitled to collect one third of the total supplemental fee judgment from Colantuno and one third from Dikeou. *Id.*

We granted certiorari to determine whether, under the Act, a joint debtor's proportionate share of indebtedness should be calculated on a percentage interest basis or on a per

capita basis when one debtor settles with the creditor. We also granted certiorari to determine whether the Act applies to all debtors, or only to judgment debtors.[1]

## ANALYSIS

This case presents an opportunity for us to address the manner in which a joint debtor's proportionate share of liability under the Act should be calculated when one debtor settles with the creditor. Because we have not previously considered this issue, our analysis encompasses an examination of statutes and cases from other jurisdictions involving similar issues.

### I. Standard of Review

■ The issues in this case involve statutory interpretation, and therefore constitute matters of law. *Fogg v. Macaluso*, 892 P.2d 271, 273 (Colo.1995); *Colo. Div. of Employment & Training v. Parkview Episcopal Hosp.*, 725 P.2d 787, 790 (Colo.1986). We therefore review the court of appeals' decision below de novo. *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.*, 10 P.3d 654, 659 (Colo.2000); *Fogg*, 892 P.2d at 273.

The Act, which is found at sections 13–50–102 to –105, 5 C.R.S. (2000), governs the rights and obligations of a creditor and its joint debtors when one or more of those debtors is released from liability. The Act provides that a creditor's release of one joint debtor fully discharges that debtor's obligation to the creditor, but does not affect the liability of the remaining debtors:

> A creditor of joint debtors may release one or more of such debtors, and such release shall operate as a full discharge of such debtor so released, but such release shall not release or discharge or affect the liability of the remaining debtor. Such release shall be taken and held to be a payment in

the indebtedness of the full proportionate share of the debtor so released. § 13–50–102. Indeed, the Act specifically provides that when a debtor is released, none of the remaining debtors will be liable for more than his proportionate share of the indebtedness, unless the released debtor is a surety of one of the remaining debtors. § 13–50–103. The terms "proportionate share" and "debtor" are not defined under the Act, nor does the Act provide for a method of calculating the remaining debtors' proportionate shares.

### II. Proportionate Share

■ Colantuno argues that his proportionate share of the supplemental attorney fees award should be calculated based upon his percentage interest in the E & A partnership, rather than on a per capita basis. Tenenbaum argues that a per capita calculation is more appropriate. We agree with Tenenbaum that the court of appeals correctly held that Colantuno's proportionate share under the Act should be calculated on a per capita basis, by dividing the award evenly among the debtors.

The Act does not set forth the method by which a debtor's proportionate share should be calculated. Nor does legislative history provide guidance on the issue.[2] While the Uniform Contribution Among Tortfeasors Act provides that the pro rata shares of liability of joint *tortfeasors* should be calculated based upon their relative degrees of fault, no such guidance is provided with regard to calculating the proportionate shares of liability for joint *debtors*, whose common obligation is defined by contract. *See* § 13–50.5–103, 5 C.R.S. (2000) ("The relative degrees of fault of the joint tortfeasors shall be used in determining their pro rata shares.").

■ The promissory note at issue in this case contractually imposed joint and several liability on the debtors. Thus, upon default,

---

1. We granted certiorari on the following issues:
   1. Whether, under the Colorado Joint Rights and Obligations Act, the phrase "proportionate share" means a percentage interest or a per capita interest.
   2. Whether the Colorado Joint Rights and Obligations Act applies to all debtors implicated by an action or only to judgment debtors.

2. The Act was originally passed in 1899 in substantially the same form as its current version. *See* ch. 108, sec. 1–3, 1899 Colo. Sess. Laws 239; *Ducey v. Patterson*, 37 Colo. 216, 218, 86 P. 109, 110 (1906). Our research reveals no legislative history concerning the passage of this statute.

Tenenbaum could have sought full payment on the note from one or all of the debtors. *See Bohrer v. DeHart*, 961 P.2d 472, 475 (Colo.1998) (noting that under the common law rule of joint and several liability, any one responsible party may be liable for all losses incurred by a plaintiff). As the court of appeals correctly noted, however, the joint and several liability contractually imposed on the defendants by the promissory note was severed by operation of law when Tenenbaum released Isham from liability. § 13–50–102; *Tenenbaum*, 3 P.3d at 458–59. Thus, the remaining debtors were no longer jointly liable, but were only liable for their "proportionate shares" of the debt. § 13–50–103. The Act, however, did not provide for a method of calculating the proportionate shares.[3]

Moreover, we have not previously directly addressed the issue as to how a non-settling debtor's proportionate share of a remaining obligation should be calculated. However, in *Simpson v. Morgan*, 124 Colo. 441, 444, 238 P.2d 200, 202 (1951), this court held that a released joint debtor who had been assigned the unsatisfied portion of a creditor's judgment, was entitled to the half of the judgment owed by the other debtor, reasoning that the creditor was the owner of the judgment and thus had the right to assign it to anyone. *Id.* In so holding, this court cited language from a California case stating that, "[The creditor was] entitled to execution against appellant for an aliquot part of the debt based on the whole number of co-sureties."[4] *Id.* This language supports our conclusion that a non-settling debtor's proportionate share of a joint debt should be calculated on a per capita basis.

We also find statutes in other jurisdictions similar to the Act persuasive. For example, under a Minnesota statute, a creditor may release one obligor without impairing its right to collect the remainder of the debt from his co-obligors. Minn.Stat. § 548.21 (2000). That statute also provides that the "discharge shall have the effect of a payment by the party discharged of the party's equal share of the debt, according to the number of debtors, aside from sureties." *Id.*

Similarly, the Ohio Revised Code provides that when a partnership dissolves, a partner may be released from obligations arising from his association with the partnership. Ohio Rev.Code Ann. § 1779.09 (Anderson 2001). Such a release, however, does not affect the obligations of the remaining partners. *Id.* The Ohio Supreme Court has determined that the liability of the released joint debtor should be calculated based upon the number of other debtors, and not upon any agreement between them fixing a ratio of liability. *Walsh v. Miller*, 51 Ohio St. 462, 38 N.E. 381, 388 (1894).

These statutes thus require that a released debtor's share of the debt be calculated on a per capita basis. It follows that the remaining debtors' proportionate shares should be calculated similarly. We are therefore persuaded that the appropriate method of calculating a joint debtor's proportionate share under the Act is by dividing the total award by the total number of debtors.

■ Finally, we conclude that any perceived unfairness in a per capita calculation is mitigated by a debtor's common law right to sue a joint debtor for contribution that arises when a debtor has paid more than his share. *Humphrey v. O'Connor*, 940 P.2d 1015, 1020 (Colo.App.1996) (holding that a right of common law contribution exists for a co-obligor when the co-obligor pays more than his or her share of the original common liability); *see Schiffer v. United Grocers, Inc.*, 329 Or. 86, 989 P.2d 10, 14 (1999) (noting that the rule providing for the release of all co-obligors when one is released, rather than for apportionment of the remaining debt among non-settling debtors is most prevalent in jurisdictions without a right of contribution).

---

**3.** Nor do we find guidance in defining this term under the Uniform Partnership Law ("UPL"), which governs partnerships in Colorado. While section 7–64–401, 2 C.R.S. (2000) of the UPL defines the rights and responsibilities among partners, it does not use the term "proportionate share" in discussing the joint obligations of partners toward a common creditor.

**4.** The term "aliquot" is defined as "fractional." *Webster's Ninth New Collegiate Dictionary* 70 (1998).

Under our approach, a debtor who believes, based on an agreement among his co-debtors concerning their relative liabilities, that he has paid more than his fair share of an obligation, may enforce such an agreement in a contribution suit. In this case, the E & A partnership agreement would govern the relative obligations of Isham, Colantuno and Dikeou in a contribution suit.[5] Thus, questions as to the partners' liability in relation to their percentage interests in the partnership are properly resolved in a contribution suit by applying the partnership agreement.

In contrast, the present suit involves the enforcement of a promissory note by a creditor. The promissory note governs the rights and obligations of Tenenbaum with respect to the former partners of E & A, not the obligations of the partners relative to each other. Indeed, as discussed above, the promissory note contractually imposed joint and several liability on the former E & A partners for the original debt. The debtors had thus agreed with the creditor to be jointly and severally liable for the debt, irrespective of their relative ownership interests in the partnership or their relative liability for common obligations under the partnership agreement. Therefore, it would be inappropriate for a trial court to determine the apportionment of the judgment arising from the note based on the E & A partnership agreement. Rather, the partnership agreement should be interpreted in the context of a contribution suit between the partners, while the judgment here should be apportioned on a per capita basis.

In summary, we hold that a joint debtor's proportionate share under the Act should be calculated on a per capita and not a percentage interest basis by dividing the obligation by the total number of debtors. In doing so, we recognize that a nonsettling debtor may seek contribution against his co-debtors when the non-settling debtor has paid more than his share of the obligation.

## III. Debtor

■ Having determined that a co-debtor's proportionate share of a common obligation under the Act should be calculated on a per capita basis, we now turn to the issue as to whether Silverberg should be considered when determining the debtors among whom the debt should be divided. Colantuno argues that the term "debtor" should include all joint-debtors, even those, like Silverberg, who were never named as parties in the suit. We disagree.

The court of appeals properly held that Silverberg should not be included in the calculation to determine the proportionate shares of the joint debtors under the Act. *Tenenbaum,* 3 P.3d at 460. As the court of appeals noted, the supplemental attorney fees at issue here were generated after Silverberg had settled with Tenenbaum, and thus represented the cost of pursuing collection against only Isham, Colantuno and Dikeou. *Id.* Indeed, because Silverberg had settled prior to Tenenbaum's bringing the suit that resulted in the award entered in January 1996, he was never a debtor to Tenenbaum with regard to the judgment for supplemental attorney fees accrued from January 1996 through March 1997.

Thus, the court of appeals properly held that the judgment should be apportioned only among Isham, Colantuno and Dikeou on a per capita basis. Because Isham had been fully released from his obligation, Colantuno and Dikeou were properly found to be liable for each of their one-third shares of the judgment.

A contrary conclusion would defeat the policy behind settlement. Generally, settlement is intended to avoid the time and expense of litigation, including attorney fees. Thus, to attribute attorney fees to Silverberg generated during the litigation that followed Silverberg's settlement would conflict with the policy behind settlement.

5. Indeed, section 7–64–401(2), 2 C.R.S. (2000), indicates that each member of a partnership is chargeable with a share of the partnership losses in proportion to the partner's share of the profits. The E & A partnership, however, is not named as a defendant in this case. Instead, Colantuno, Dikeou and Isham are the named defendants and thus the judgment awarded by the trial court represents an obligation owed by them individually, rather than an obligation of the partnership.

## CONCLUSION

In summary, we hold that a joint debtor's proportionate share that arises under the Act when one debtor settles with a creditor, should be calculated on a per capita and not a percentage interest basis, by dividing the obligation by the total number of joint debtors. We further hold that a non-settling debtor may seek contribution against his co-debtors when the non-settling debtor has paid more than his share of the obligation. Finally, we conclude that in determining the total number of debtors by which to divide an obligation for attorney fees generated after a suit for collection, a court should not consider a debtor who had previously settled his obligation with the creditor. Accordingly, we affirm the court of appeals' decision holding that a joint debtor's proportionate share of indebtedness under the Act should be calculated on a per capita basis and its holding that such a calculation should not consider a debtor who settled prior to a suit, when the judgment at issue is for attorney fees generated after the suit.

Justice COATS dissents.

Justice COATS dissenting:

I understand the court to hold today that the "proportionate share" of the indebtedness of a remaining debtor on a joint obligation, after the release of one or more of the other joint debtors by the creditor, is different from his proportionate share of the original obligation relative to the other joint debtors. Because I consider it unnecessary (and somewhat anomalous) to attribute to the legislature an intent to define "proportionate share" in two different ways for the same obligation, reintroducing the notion of contribution and encouraging an additional round of litigation in the very provision in which it expressly abolishes joint and several liability for non-settling joint debtors, I respectfully dissent.

While retaining joint and several liability of obligors for joint obligations, article 50 of title 13 changes the preexisting rule and permits a creditor of joint debtors to release one or more of the debtors without releasing the remaining debtors or discharging the entire joint debt. § 13–50–102, 5 C.R.S. (2000). Instead, the release is to be treated merely as the payment of the "full proportionate share of the debtor so released." *Id.* Although section 13–50–102 also indicates that such release shall not release or discharge or affect the liability of remaining debtors, section 13–50–103 expressly changes the nature of the obligation of any remaining joint debtor from one of joint and several liability to liability for no more than his proportionate share of the indebtedness. § 13–50–103. Article 50 is therefore not merely concerned with the amount of the joint obligation that remains after the release of some debtors, but actually limits and defines the extent of each co-debtor's remaining liability after the abolition of joint and several liability.

The statute itself merely refers to a "proportionate share," without further embellishment. Colorado's statutory provisions governing the incidents of partnerships, however, make clear that although partners are jointly and severally liable to those dealing with the partnership, § 7–64–306(1), 2 C.R.S. (2000), the partners are individually chargeable with a share of the partnership losses only in proportion to each partner's entitlement to a share of the partnership profits. § 7–64–401(2). This share, in turn, is determined by the number of partners only if not otherwise specified in the partnership agreement. § 7–64–103(1). Similarly, in the context of a right of contribution, the term "proportionate share" generally refers to the percentage of the original obligation for which the obligor is liable to his co-obligors. *See, e.g., Humphrey v. O'Connor,* 940 P.2d 1015, 1020 (Colo.App.1996) (explaining the reference in comment b to the Restatement of Restitution § 82 (1937) to mean that no common law right to restitution exists for a co-obligor unless he pays more than his "proportionate share" of the original common liability). The majority acknowledges as much by recognizing a right to contribution against other co-debtors by a nonsettling debtor who is required to pay "more than his share of the obligation." Maj. op. at 713.

Nevertheless, in reliance upon prior cases that apparently do not involve a partnership agreement allocating profits and losses on anything other than a per-capita basis, *see Simpson v. Morgan*, 124 Colo. 441, 444, 238 P.2d 200, 202 (1951), and statutes from other jurisdictions that lack any similar provision abolishing joint and several liability upon partial settlement, *see* Minn.Stat. § 548.21; Ohio Rev.Code § 1799.09, .10; *Walsh v. Miller*, 51 Ohio St. 462, 38 N.E. 381 (1894), the court construes the term "proportionate share" in section 13–50–103 to mean a per-capita share based on the number of co-obligors. While construing "proportionate share" to mean per-capita liability may relieve a creditor of some of the disadvantages of taking action that statutorily relieves its debtors of joint and several liability, such ·a construction requires a presumption that the legislature intended a debtor's "proportionate share" of a single obligation to mean different things relative to different parties, as well as a presumption that the legislature intended to apply principles of common law contribution to co-debtors who are not subject to joint and several liability. *Cf. Humphrey*, 940 P.2d at 1020 (construing Restatement of Restitution § 82 to allow for right of contribution only where co-debtor has paid entire common obligation or has paid more than his share and discharged co-obligor's obligation on debt).

Although section 13–50–102 may benefit creditors by permitting them to settle with some joint debtors without discharging the entire joint obligation, it seems clear to me that section 13–50–103 is specifically designed to benefit the remaining co-debtors, once the creditor chooses to settle a portion of the debt, by relieving them of joint and several liability. Having abolished joint and several liability in this situation without ex-pressly creating a third scheme of per-capita liability with a concomitant right of contribution, the legislature, by referring to "proportionate shares," should be taken to have returned the situation to one of individual liability for each debtor based on his individual share of the indebtedness.

To the extent that no express agreement otherwise allocates proportionate shares among the partners or co-debtors, per-capita liability is presumed and no right of contribution exists or is required. To the extent that the liability of co-debtors to each other for satisfaction of the obligation varies from per-capita liability, the abolition of joint and several liability subjects each co-debtor merely to his proportionate share of the obligation. I am disinclined to assume more than is necessary to make rational sense of a legislative mandate, and I find it imminently reasonable for the general assembly to have abolished joint and several liability for non-settling co-debtors for the express purpose of limiting their liability to no more than their share of the original common liability and eliminating the need for subsequent litigation among co-debtors.

I would therefore reverse the judgment of the court of appeals and hold that under the Colorado Joint Rights and Obligations Act, a joint debtor's proportionate share of indebtedness should be calculated on a percentage interest basis rather than merely a per-capita basis.