**A. TENENBAUM & COMPANY, INC., Plaintiff–Appellee,**

**v.**

**Joseph F. COLANTUNO, Defendant–Appellant.**

**No. 03CA0528.**

Colorado Court of Appeals, Div. IV.

Oct. 7, 2004.

As Modified on Denial of Rehearing March 3, 2005.

Certiorari Denied Aug. 8, 2005.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

Aronowitz & Ford, LLP, Timothy C. Ford, Denver, Colorado, for Plaintiff–Appellee.

Steve A. Miller, P.C., Steve A. Miller, Denver, Colorado, for Defendant–Appellant.

ROY, J.

Defendant, Joseph F. Colantuno (debtor), appeals three trial court orders determining the proportionate shares of the original judgment in favor of A. Tenenbaum & Co., Inc. (creditor), attorney fees awards, debtor's satisfaction of the judgment, creditor's compliance with satisfaction orders, and several other issues. We affirm but remand for further proceedings.

This is the fifth appeal addressing a judgment in favor of creditor and against debtor and his former partners, John P. Dikeou and Robert W. Isham (now Isham's estate) for the collection of a promissory note arising from a complex banking and partnership dispute. *See Silverberg v. Colantuno*, 991 P.2d 280 (Colo.App.1998)(*Colantuno I*); *A. Tenenbaum & Co. v. Colantuno*, 3 P.3d 456 (Colo.App.1999)(*Colantuno II*), *aff'd*, 23 P.3d 708 (Colo.2001)(*Colantuno III*); *A. Tenenbaum & Co. v. Colantuno*, 2002 WL 1832876 (Colo.App. No. 00CA1087, Apr. 4, 2002) (not published pursuant to C.A.R. 35(f))(*Colantuno IV*).

As pertinent here, on May 7, 1996, the trial court entered judgment against debtor, Isham, and Dikeou, jointly and severally, in the amount $673,784.62, including $334,400 in principal, interest in the amount of $207,773.87, and attorney fees in the amount of $131,610.75 (attorney fees I), all accrued through December 31, 1995.

In August and December 1996, Isham paid a total of $450,000, which was credited to principal, interest, and attorney fees, and he was released from liability under the note and for accrued and future attorney fees. In addition, another obligor on the note, Silverberg, settled prior to the commencement of the action and paid approximately $169,000 in late 1996, which was credited to principal and interest.

Debtor and Dikeou appealed the original judgment. On August 20, 1998, a division of this court affirmed, and the mandate issued in late 2000. *See Colantuno I.*

While that appeal was pending, the trial court awarded a judgment for attorney fees in favor of creditor and against Dikeou and debtor in the amount of $95,146.50 (attorney fees II), and debtor and Dikeou again appealed. On August 5, 1999, a division of this court affirmed the judgment, but concluded that the trial court had erred in failing to apportion the attorney fees among debtor, Dikeou, and Isham. *See Colantuno II.* As pertinent here, the division held that the settlement with Isham resulted in the conversion of the preexisting joint and several liability into several liability for the remaining judgment debtors and concluded that creditor was entitled to collect one-third of the attorney fees I order from debtor and one-third from Dikeou. The remaining one-third was resolved in the settlement with Isham. *Colantuno II.* Silverberg's settlement did not include attorney fees as it was entered prior to the commencement of the action and he was not a party.

Debtor appealed that determination to the supreme court, which affirmed. *Colantuno III.* This court's mandate to the trial court issued on June 28, 2001, with the following instructions:

> Insofar as the judgment awarded attorney fees to [creditor], it is affirmed. Insofar as the judgment did not apportion those fees, it is reversed, and the cause is remanded for entry of judgment in accordance with this opinion.

> On remand, the trial court shall determine the appropriate rate of interest to be paid on the [attorney fees I order].

*Colantuno II, supra,* 3 P.3d at 460.

Meanwhile, in April 2000, the trial court determined the amount due on the original judgment and attorney fees II order as of certain dates and determined proportionate shares based on *Colantuno II.* Debtor and Dikeou had posted a $110,000 letter of credit, for which debtor was responsible for $60,000, to guarantee payment of the remaining original judgment, and the trial court permitted creditor to draw upon the letter of credit.

The funds drawn were credited to debtor and Dikeou in accordance with their respective contributions.

Debtor appealed that order, and a division of this court, relying on *Molitor v. Anderson,* 795 P.2d 266 (Colo.1990), concluded that the trial court was without jurisdiction to order debtor to pay one-third of the original judgment and attorney fees I award because the mandates had not yet issued in *Colantuno I, Colantuno II,* and *Colantuno III. See Colantuno IV.* The division, however, affirmed the application of the letter of credit and a charging order to the original judgment and attorney fees II award.

On June 25, 2002, this court's mandate in *Colantuno IV* issued and directed the trial court to determine debtor's one-third several liability as of August 19, 2000. It also directed that all further computations must give effect to the liability becoming several on August 14, 1996, the date of Isham's first installment of $350,000. In remanding the case, the division stated that debtor could assert claims for reimbursement against creditor, claims for contribution against Dikeou, and a setoff against creditor's further claims for attorney fees.

On January 22, 2003, the trial court issued an order (remand order) regarding the remand instructions from *Colantuno II, Colantuno III,* and *Colantuno IV.* As pertinent here, the trial court concluded that the attorney fees II award should not be divided equally because, pursuant to *Colantuno II* and *Colantuno III,* debtor's proportionate share of that award should be one-third. The trial court also concluded that it lacked jurisdiction to award postjudgment interest on the attorney fees II award until its entry of judgment on remand.

The trial court also concluded that the attorney fees incurred in *Colantuno IV* (attorney fees III) should be assessed to debtor alone and not to Dikeou. The trial court further concluded that the attorney fees incurred in this appeal could be reduced to the extent that debtor prevails here.

Finally, the trial court addressed the proportionate shares issue in light of *Colantuno II, Colantuno III,* and *Colantuno IV.* August

14, 1996, the date of Isham's first installment of $350,000, became the starting point for the trial court's proportionate shares determination. It divided the original judgment for principal ($334,400) by four and the attorney fees I award ($131,610.75) by three. With interest accrued to the date of the original judgment, the calculation would be $542,173.87 principal and interest divided by four and attorney fees I ($131,610.75) divided by three.

On February 10, 2003, the trial court issued two orders, one regarding the proportionate shares of debtor and Dikeou (proportionate shares order), and one regarding creditor's motion for attorney fees between April 1997 and October 2002 (attorney fees III). In its proportionate shares order, the trial court incorporated two spreadsheets creditor created as an accurate representation of the status of the judgments, including proper proportionate shares determination, accrued interest, and payments. It concluded that debtor's proportionate share of the obligation was $230,928.06, the sum of his proportionate share of the original judgment including interest, attorney fees II award, and attorney fees III award, plus interest.

Thus, the trial court concluded that, as of that time, debtor owed creditor the sum of $99,970.50 and $230,928.06 plus interest, minus debtor's payment of $174,682.04. Debtor appeals trial court's conclusions in those three orders.

## I.

Debtor contends that the trial court erred in its interpretation of *Colantuno II, Colantuno III*, and *Colantuno IV* in determining proportionate shares of the obligation and misallocated payments made by the settling debtors in determining any remaining obligation on the debt. We disagree.

■ More particularly, debtor argues that the trial court should have based its determination of proportionate shares on the balance of the judgment, interest, and attorney fees after crediting the Silverberg and Isham payments. We conclude that, while creditor can only collect the principal, interest, and attorney fees once, debtor's proportionate share

must be computed on the original judgment, plus interest. His total obligation is his proportionate share plus any attorney fees awarded against, or allocated to, him.

In construing *Colantuno II* and *Colantuno III* in its remand order, the trial court stated:

Determining [debtor's] and Dikeou's proportionate share of the original judgment requires breaking the original judgment down into $334,400, which was the amount the court found Isham, [debtor,] and Dikeou liable for in its January 17, 1996 order, and $131,610.75 which is the amount of attorney's fees the court awarded under the note in its order of May 7, 1996. This breakdown is necessary because Silverberg, as a non-released, joint debtor at the time of Isham's release, must be included as a debtor in dividing the $334,[4]00, but not the $131,610.75 for attorney's fees which were incurred after Silverberg's settlement. Therefore, [debtor's] and Dikeou's proportionate shares of the original judgment are $334,400 ÷ 4 + $131,610.75 ÷ 3.

In *Colantuno II* and *Colantuno III*, the courts determined that upon Isham's settlement (August 14, 1996), and pursuant to §§ 13–50–102, 13–50–103, C.R.S.2003, the joint and several liability imposed on the four debtors was severed and the remaining two nonsettling debtors, debtor and Dikeou, were no longer jointly and severally liable, but severally liable for only their proportionate shares of the debt. *Colantuno III, supra,* 23 P.3d at 712; *Colantuno II, supra,* 3 P.3d at 458–59. The court then determined that the nonsettling debtors' proportionate shares should be "calculated on a per capita and not a percentage interest basis by dividing the obligation by the total number of debtors." *Colantuno III, supra,* 23 P.3d at 713; *see Colantuno II*.

Debtor and Dikeou, thus, became severally liable, or liable for their proportionate shares of the principal, interest, and attorney fees I and II awards and were "no longer jointly liable for the entire deficiency." *Colantuno II, supra,* 3 P.3d at 459 (citing to *Smith v. Weindrop,* 833 P.2d 856 (Colo.App.1992)). In *Colantuno IV,* the division, interpreting *Co-*

*lantuno II* and *Colantuno III*, stated that "[a]ll calculations that compute amounts owed and interest must give effect to the liability becoming several on August 14, 1996."

These decisions, however, do not fully articulate how the total liability of each debtor was to be determined. At common law, the release of one joint and several debtor discharged the several, as well as the joint, liability of all debtors. 12 Richard A. Lord, *A Treatise on the Law of Contracts* § 36:18 (4th ed.1999). The common law rule, however, has been abrogated by statute in most states. 12 Lord, *supra,* § 36:18; Restatement (Second) of Contracts § 294(2) cmt. e (1981); *see also* Model Joint Obligations Act §§ 3–5, 13 U.L.A. 128, 135–36 (1925).

In Colorado, § 13–50–101, et seq., C.R.S. 2003, abrogates the common law. *See Globe Nat'l Bank v. McLean,* 84 Colo. 207, 269 P. 9 (1928)(explaining that a version of the statute was in effect at least by 1899). Section 13–50–102 states:

> A creditor of joint debtors may release one or more of such debtors, and such release shall operate as a full discharge of such debtor so released, but such release shall not release or discharge or affect the liability of the remaining debtor. Such release shall be taken and held to be a payment in the indebtedness of the full proportionate share of the debtor so released.

■ In *Smith v. Weindrop, supra,* 833 P.2d at 858, a division of this court interpreted § 13–50–102, stating:

> [A] release of one or more joint debtors extinguishes the obligation of any of the remaining joint debtors to pay so much of the debt as was deemed paid by the released debtor. That is to say, the release does not affect the liability of the remaining joint debtor, except as to the balance of the obligation.

■ By lessening the harshness of the common law rule, our legislature permitted and encouraged creditors to settle with some debtors and collect from nonsettling debtors. However, we do not believe that our legislature meant for the creditor to receive a windfall, that is, to collect more than the original

obligation. Nor is the creditor entitled to enforce the contribution rights of the debtors who paid in excess of their proportionate shares under the guise of collecting the debt.

No Colorado appellate court, and from our research no other appellate court, has stated a precise method to determine the proportionate share of the remaining obligor or obligors after settlement with, and release of, other joint and several obligors.

Debtor argues that the proportionate shares should be determined after deducting the payment made by the settling obligor or obligors. We do not agree. If that were the practice, the creditor would not be able to collect the full obligation from the remaining several obligors. That practice would not encourage partial settlements, as it would severely limit the ability of the creditor to be paid in full and realize the benefit of joint and severable liability bargained for in the first instance.

Here, the determination of the proportionate shares of the nonsettling obligors is somewhat unique in that the Isham settlement was for a sum in excess of Isham's proportionate share. Not all joint and several obligors are equally able to pay. The joint and several obligor who is most exposed because of his or her means or liquidity may well settle for an amount greater than his or her proportionate to avoid paying it all. The determination of the total obligation may be complicated by the accrual of interest and attorney fees.

■ By way of simple illustration, without accruing interest and attorney fees, a creditor is owed $100 by three joint and several debtors. One debtor pays $25 and obtains a complete release from further liability. The remaining debtors are now severally liable for the balance. The proportionate share of each remaining debtor is $33.33. The creditor can collect up to that amount from each of the remaining debtors, which would limit recovery to less than the original obligation, or $91. If, however, the settling debtor pays $60, the proportionate share of each of the remaining debtors is still $33.33. The creditor can collect up to $33.33 from each remaining debtor until the obligation is paid in

full. This collection could be $33.33 from one and $7.67 from the other. Under either scenario, once the obligation has become several, any debtor who pays more than his proportionate share has a right of contribution from the remaining debtors.

Applying that scenario here, it is undisputed that the principal balance of the promissory note was $334,400 and the default occurred April 1, 1991. Judgment was entered May 7, 1996, for the principal balance with accrued interest of $207,773.87, and accrued attorney fees through December 31, 1995, in the amount of $131,610.75 (attorney fees I), all earning interest at the rate of twelve percent per annum compounded annually. The proportionate share of the original obligation and accrued interest of each joint and several obligor, which includes Silverberg, on the principal and accrued interest is [$334,400 + $207,773.87] ÷ 4 = $135,543.47. In addition to their proportionate share, each debtor is separately responsible for the attorney fees and costs allocated to him. The allocation of attorney fees I to each debtor who was a party to the litigation, which does not include Silverberg, is $131,610.75 ÷ 3 = $43,870.25. Debtor's total obligation becomes $179,413.72 (proportionate share plus allocated attorney fees).

Attorney fees II, in the amount of $95,146.50, covering the period January 1, 1996, through March 31, 1997, was awarded December 18, 1997, as of November 14, 1997. Debtor's proportionate share is one-third, *see Colantuno II*, or $31,715.50.

Attorney fees III, in the amount of $163,160, covering the period of April 1, 1997, through October 30, 2002, was entered February 10, 2003. Of this award, $99,970.50 was allocated by the trial court to debtor alone under *Colantuno III* and *IV*. This increased debtor's total obligation, his proportionate share plus attorney fees, to $311,099.72 plus interest at twelve percent per annum compounded annually from various dates.

Therefore, we conclude the trial court did not err in determining debtor's proportionate share of the obligation.

## II.

Debtor contends (1) that the trial court erred in its calculations of whether he satisfied the judgments in favor of creditor; (2) that creditor failed to comply with court orders regarding satisfaction in that a payment he made in the amount of $2,039.27 was not recorded; (3) that the attorney fees order dated February 10, 2003 was improper because he ceased being a judgment debtor after June 1999 or, in the alternative, June 2001; (4) that creditor's conduct was obdurate in that creditor continued to press the action after he had paid in full; and (5) that he has a reimbursement claim against creditor and the trial court erred by not ruling on his motion seeking reimbursement; and (6) that the parties have stipulated that the unpaid amount of the original judgment was $79,991.65, as of February 21, 1997. We remand for further proceedings.

With respect to issue two, it is apparent from a review of the record that the payment in question was credited.

With regard to issues one, three, four, and five, these arguments are based primarily on debtor's calculation of his proportionate share of the obligation. His method has been rejected. That does not necessarily mean, however, that one or more of the arguments may not have merit. With respect to issue six, the trial court must take into account the impact, if any, of the stipulation in any accounting.

According to the record, debtor has now paid $198,872.90, which is $63,329.43 in excess of his proportionate share, but less than his total obligation including attorney fees allocated to him.

However, in oral argument creditor indicated that Dikeou had settled by the payment of his proportionate share. There are indications in the record that, with that payment and others, the total payments may have exceeded the obligation with interest and attorney fees.

At oral argument, creditor's counsel indicated that the excess, if any, was refundable to Silverberg. It is not the obligation of the creditor to enforce contribution, especially when, as here, absent other agreements not

at issue here, interest does not accrue at twelve percent per annum and there is no shifting of attorney fees with respect to those issues.

There is argument here that the total obligation is overpaid, and there appears to be support in the record for that assertion. There are also allegations that there are attorney fees orders which overlap as to the periods in which the fees were incurred, an allegation that has support in the record as previously described in this opinion.

However, we are not fact finders, and a full accounting is required to ascertain the status of the matter.

Accordingly, the case is remanded for a full accounting. For that purpose, the figures used in this opinion, while appearing to be exact, are illustrative only and are not binding on the trial court.

Judge VOGT and Judge LOEB concur.